**IN THE UNITED STATES DISTRICT COURT**
**FOR THE DISTRICT OF COLUMBIA**

|  |  |
|---|---|
| CENTER FOR BIOLOGICAL DIVERSITY,<br>378 N. Main Ave.<br>Tucson, AZ 85702-0710<br><br>       Plaintiff,<br><br>   v.<br><br>U.S. ENVIRONMENTAL PROTECTION<br>AGENCY,<br>1200 Pennsylvania Avenue, NW<br>Washington, DC 20460<br><br>       Defendant. | Civil Action No.: _____ |

## COMPLAINT FOR DECLARATORY AND INJUNCTIVE RELIEF

1.      In this action, the Center for Biological Diversity ("Center") – an environmental conservation organization that works to protect native wildlife species and their habitats, including from exposure to toxic chemicals – challenges the U.S. Environmental Protection Agency's ("EPA") violations of the Freedom of Information Act, 5 U.S.C. § 552, *as amended* ("FOIA"), or alternatively, the Administrative Procedure Act, 5 U.S.C. §§ 701-06 ("APA"), in connection with two FOIA requests which the Center filed with the EPA on June 26, 2014 and October 20, 2014 ("FOIA Requests") and which relate to the EPA's decision to register Enlist Duo, an herbicide used in industrial agriculture.

2.      Enlist Duo is a new herbicide that combines the active ingredients glyphosate dimethylammonium salt ("glyphosate") (commonly known as "Round-Up") and 2,4-Dichlorophenoxyacetic acid ("2,4-D"), resulting in a synergistic combination with adverse environmental effects.  Enlist Duo is used on a new class of genetically engineered corn and soybean crops by killing all plants that have not been genetically engineered to resist Enlist Duo.

2,4-D was an active ingredient of the Vietnam-era defoliant "Agent Orange," is highly toxic to a wide spectrum of terrestrial and aquatic plants, birds, and mammals, and has significant adverse effects on human health.

3.    On April 30, 2014, the EPA proposed to register Enlist Duo for use in six states pursuant to the Federal Insecticide, Fungicide, and Rodenticide Act, 7 U.S.C. § 136-136y ("FIFRA"), after claiming, pursuant to the Endangered Species Act, 16 U.S.C. §§ 1531-1544 ("ESA"), that the use of Enlist Duo in those states (Illinois, Indiana, Iowa, Ohio, South Dakota, and Wisconsin) would have "no effect" on 53 endangered and threatened species.  In making its "no effect" finding, the EPA completed an ecological risk assessment that assumed that Enlist Duo would not migrate offsite through drift or runoff.

4.    On October 15, 2014, the EPA approved Enlist Duo's registration in the six states. The same day, EPA proposed to register Enlist Duo in 10 additional states (Arkansas, Kansas, Louisiana, Minnesota, Mississippi, Missouri, Nebraska, North Dakota, Oklahoma, and Tennessee), based on a similar "no effect" finding for 168 endangered and threatened species.

5.    The Center submitted the FOIA Requests to understand and assess the basis for the EPA's "no effect" findings and to safeguard the Center's interests in biodiversity and the protection of wildlife from exposure to toxic chemicals like Enlist Duo.

6.    On June 26, 2014, the Center sent a FOIA request to the EPA, requesting records that relate to the EPA's "no effect" findings for its approval of Enlist Duo in the six states.

7.    On October 20, 2014, the Center sent a FOIA request for records pertaining to the EPA's "no effect" findings for Enlist Duo in the 10 additional states.

8.    On February 20, 2015, eight months after the Center sent its first FOIA request, the EPA sent a response letter to the Center.  The EPA sent additional responses on March 12,

March 13, and on May 1, 2015.  However, the EPA did not send any responses or communications to the Center about either of the FOIA Requests after May 1, 2015.

9.     On October 2, 2015, five months after the EPA's May 1, 2015 letter, the Center asked the EPA for an estimated date of completion of a determination on both FOIA Requests, as required by FOIA.  5 U.S.C. § 552(a)(7)(B)(ii).

10.     On October 8, 2015, the EPA responded to the Center's request for an estimated completion date with two letters dated stating that the agency was withholding approximately 150 records in their entirety, amounting to a total of about 500 pages.  The EPA claimed that the records are "internal deliberative and/or attorney-client privileged correspondence" and "therefore exempt from disclosure by virtue of 5 U.S.C. § 552(b)(5)."  The EPA did not explain how the withheld records qualified for the deliberative-process and/or attorney-client privileges, and did not provide reasonably segregable portions of any of the records.

11.     The Center appealed the EPA's withholdings for both FOIA Requests in a letter dated November 6, 2015.  The EPA did not acknowledge the Center's appeals until after the Center sent a letter notifying the EPA of the violation and offering to assist.  To date, the EPA has not responded to the Center's FOIA appeals.

12.     The EPA's refusal to release information pertaining to the Enlist Duo herbicide directly contravenes FOIA's policy of government transparency.

13.     Because prompt access to these records is necessary to effectuate FOIA's purpose, but where the EPA is unlawfully withholding the records by failing to conduct an adequate search for responsive records, by improperly invoking FOIA's narrow exemptions to the law's disclosure mandate in order to withhold records, and by refusing to provide all reasonably segregable portions of any records that may contain material that is lawfully exempt,

the Center seeks declaratory relief establishing that the EPA has violated FOIA, or alternatively, the APA. The Center also seeks injunctive relief directing the EPA to provide it with any improperly withheld records and all reasonably segregable portions of any lawfully exempt records without any further delay.

## JURISDICTION AND VENUE

14.     This Court has jurisdiction over this matter pursuant to 5 U.S.C. § 552(a)(4)(B) and 28 U.S.C. § 1331 because this action arises under FOIA, the APA, and the Declaratory Judgment Act, 28 U.S.C. § 2201.

15.     Venue properly vests in this Court pursuant to 5 U.S.C. § 552(a)(4)(B), which provides venue for FOIA cases in this district, and because a portion of the responsive records may be found in this district.

16.     Declaratory relief is appropriate under 28 U.S.C. § 2201.

17.     Injunctive relief is appropriate under 28 U.S.C. § 2202 and 5 U.S.C. § 552(a)(4)(B).

## PARTIES

18.     Plaintiff CENTER FOR BIOLOGICAL DIVERSITY is a national, non-profit conservation organization with offices throughout the United States. The Center has about 48,000 members. The Center and its members are harmed by the EPA's violations of FOIA, or alternatively the APA, as such violations preclude the Center from gaining a full understanding of the harmful environmental and human health effects of the Enlist Duo herbicide as well as an understanding of the EPA's decision to register this and other chemicals and pesticides and any related end-use products.

19.     Defendant U.S. ENVIRONMENTAL PROTECTION AGENCY is an independent agency of the executive branch of the U.S. government.  The EPA is in possession and control of the records that the Center seeks, and as such, it is subject to FOIA pursuant to 5 U.S.C. § 552(f).  The EPA is the federal agency responsible for applying and implementing the federal laws and regulations at issue in this complaint.

## STATUTORY BACKGROUND

20.     FOIA's basic purpose is for government transparency.  It establishes the public's right to access all federal agency records unless such records may be withheld pursuant to one of nine, narrowly construed FOIA exemptions.  5 U.S.C. § 552(b)(1)–(9).

21.     FOIA imposes strict and rigorous deadlines on federal agencies when they receive a request for records pursuant to FOIA.  Specifically, an agency must determine whether to disclose responsive records and notify the requester of its determination within 20 business days of receiving a FOIA request, and it must make records "promptly" available, unless it can establish that certain unusual circumstances are present and/or that it may lawfully withhold records, or portions thereof, from disclosure.  5 U.S.C. § 552(a)(3)(A), (a)(6).  Also within 20 business days, the agency must inform the requester that it has a right to appeal the agency's determination.  *Id.* § 552(a)(6)(A)(i).

22.     FOIA places the burden on the agency to prove that it may withhold responsive records from a requester.  *Id.* § 552(a)(4)(B).

23.     Congress has specified limited circumstances in which federal agencies may obtain more time to make the determination that is required by 5 U.S.C. § 552(a)(6)(A)(i).

24.     First, an agency may toll the 20 business-day deadline for up to 10 additional days to seek additional information from a requester.  5 U.S.C. § 552(a)(6)(A)(ii).

25.     Second, an agency may extend the 20 business-day deadline for an additional 10 business days by giving a written notice to the requester that sets forth "unusual circumstances" that justify a deadline extension, and providing the date by which the agency expects to make the determination.  *Id.* § 552(a)(6)(B).  However, when invoking such "unusual circumstances," the agency must provide the requester "an opportunity to limit the scope of the request so that it may be processed within" 20 business days or "an opportunity to arrange with the agency an alternative time frame for processing the request or a modified request."  *Id.* § 552(a)(6)(B)(ii).  In addition, when asserting unusual circumstances, the agency "shall make available its FOIA Public Liaison" to "assist in the resolution of any disputes between the requester and the agency."  *Id.*

26.     FOIA requires each agency to make reasonable efforts to search for records in a manner that is reasonably calculated to locate all records that are responsive to the FOIA request.  *Id.* § 552(a)(3)(C)-(D).

27.     FOIA also imposes strict and rigorous deadlines on federal agencies when they receive an appeal pursuant to FOIA.  Specifically, an agency must make a determination on the appeal within 20 business days after receiving the appeal.  *Id.* § 552(a)(6)(A)(ii).   An agency may extend the 20-business-day deadline for making a determination on an appeal by an additional 10 business days, but only if it provides written notice to the requester that sets forth "unusual circumstances" that justify an extension and a date by which the agency expects to make the determination.  *Id.* § 552(a)(6)(B).

28.     FOIA requires federal agencies to expeditiously disclose requested records, *see id.* § 552, and mandates a policy of broad disclosure of government records.  Any inquiry under FOIA brings with it a strong presumption in favor of disclosure.

29.     Congress recognized that in certain, limited instances, records may be withheld as exempt from FOIA's broad disclosure mandate, and thus created nine categories of exemptions. *Id.* § 552(b).  These exemptions, however, must be narrowly construed in light of FOIA's dominant objective of disclosure, not secrecy.

30.     FOIA Exemption 5 allows agencies to withhold "inter-agency or intra-agency memorandums or letters which would not be available by law to a party other than an agency in litigation with the agency."  *Id.* § 552(b)(5).  This exemption includes two privileges which the EPA has invoked here:  the deliberative-process privilege and the attorney-client privilege. Neither of these Exemption 5 privileges may be invoked to withhold from disclosure records that were created by third parties, shared with them, or prepared by independent consultants acting on behalf of their own interests and not those of the agency.

31.     The deliberative-process privilege allows a federal agency to withhold responsive records only where the records contain material that is both "predecisional" and "deliberative." In evaluating withholdings based on Exemption 5's deliberative-process privilege, the privilege must be construed as narrowly as is consistent with efficient government operation.

32.     For a record to be "predecisional," it must reflect the give-and-take of a consultative process before the agency took a specific final action.  An agency must be able to point to a specific agency decision to which a withheld record pertained.  However, draft records are not universally exempt from disclosure, and the deliberative-process privilege does not protect orders, decisions, interpretations or guidelines which have precedential weight.

33.     Portions of a record are "deliberative" only when they involve opinions or are recommendatory in nature.  Factual information in a record is not "deliberative."  Factual

records, or the factual portions of deliberative records where segregation is feasible, may not be withheld under the deliberative-process privilege and must be disclosed to the requester.

34.     The attorney-client privilege protects confidential communications between an attorney and client relating to a legal matter for which the client has sought professional advice. To lawfully invoke the privilege, there must be an attorney-client relationship and the communication must be within the scope of seeking professional advice.

35.     The U.S. district courts have jurisdiction "to enjoin the agency from withholding agency records and to order the production of any agency records improperly withheld from the complainant." *Id.* § 552(a)(4)(B).

36.     Alternatively, an agency's response to a FOIA request and/or a FOIA appeal is subject to judicial review under the APA.  The APA confers a right of judicial review on any person who is adversely affected by agency action, 5 U.S.C. § 702, and authorizes district courts to compel agency action that is unlawfully withheld or unreasonably delayed.  *Id.* § 706(1). District courts must set aside any agency action that is found to be "arbitrary, capricious, an abuse of discretion or otherwise not in accordance with law." *Id.* § 706(2)(A).

## STATEMENT OF FACTS

### EPA's Approval of Enlist Duo

37.     Enlist Duo is a synergistic combination of two highly toxic herbicides, glyphosate and 2,4-D.  It is a "broad-spectrum" herbicide – *i.e.*, it is designed to kill all plants found in corn and soybean agricultural areas that have not been genetically engineered to resist glyphosate and 2,4-D.  Industrial agricultural producers douse corn and soybean crops with the herbicide concoction, thereby killing all plants except for genetically engineered crops.  Enlist Duo can be used at any time from before crops emerge until they are 48 inches tall.

38.     The states to which the EPA's approval applies include some 150 million acres of corn and soybean cropland.  The government conservatively estimates that 2,4-D's use in agriculture will rise 200-600 percent by 2020.

39.     In its analyses, the EPA repeatedly acknowledged Enlist Duo's significant environmental impacts, yet the agency moved ahead with its approval.

40.     On April 30, 2014, the EPA proposed to register Enlist Duo pursuant to FIFRA for use in Illinois, Indiana, Iowa, Ohio, South Dakota, and Wisconsin.

41.     Before the EPA registers a pesticide, the agency has a duty to ensure it "will not generally cause unreasonable adverse effects on the environment," 7 U.S.C. § 13a(c)(5)(D), "taking into account the economic, social, and environmental costs and benefits of the use of [the] pesticide."  *Id.* § 136(bb).  The EPA uses the ecological risk assessment to evaluate the potential impact of pesticides to (non-target) organisms.

42.     In its ecological risk assessment for Enlist Duo, the EPA concluded that the herbicide would result in risk quotients exceeding the EPA's levels of concern for birds, mammals, and terrestrial plants.  However, the EPA offered no rationale that these risks are outweighed by any benefits, as FIFRA requires.  The EPA further concluded that Enlist Duo would not migrate offsite through spray drift or runoff ("drift") because 30-foot buffers would completely eliminate the possibility of any drift outside the sprayed field.

43.     The EPA relied on the ecological risk assessment, and addendum thereto, to find that Enlist Duo would have "no effect" on 49 of 53 endangered and threatened species in the six states.  The EPA reached a "no effect" finding for four additional ESA-protected species by simply concluding that these species' exposure to 2,4-D would not exceed the EPA's level of concern.

44.     As a result of the EPA's "no effect" findings for 53 species in the six states, the EPA did not initiate "formal" consultation – a more complete analysis of 2,4-D's effects on endangered and threatened species – with the expert wildlife agencies (the U.S. Fish and Wildlife Service and National Marine Fisheries Service) pursuant to Section 7(a)(2) of the ESA.  16 U.S.C. § 1536(a)(2).

45.     On June 30, 2014, the Center submitted comments to the EPA, opposing the registration of Enlist Duo in the six states and expressing concerns regarding the EPA's conclusion that Enlist Duo would have "no effect" on any endangered and threatened species. The Center is concerned that the EPA's "no effect" findings for the 53 species are not supportable by the best available scientific information.

46.     On October 15, 2014, EPA approved the registration of Enlist Duo in the six states.  The EPA's decision to register Enlist Duo in these six states was based in part on its assessment, pursuant to the ESA, that the use of Enlist Duo in those states would have "no effect" on 53 endangered and threatened species.  16 U.S. C. § 1536(c)(1).

47.     Also on October 15, 2014, EPA proposed to register Enlist Duo in 10 additional states — including Arkansas, Kansas, Louisiana, Minnesota, Mississippi, Missouri, Nebraska, North Dakota, Oklahoma, and Tennessee — based on a similar "no effect" finding for 168 endangered and species.

**FOIA Request: EPA-HQ-2014-007846**

48.     On June 26, 2014, the Center submitted a FOIA request through the EPA's online FOIA portal, FOIAOnline.regulations.gov.  The Center requested all records related to the EPA's ecological risk assessment that was the basis for the EPA's "no effect" findings for 53 species in six states, entitled "Addendum to 2,4-D Choline Salt Section 3 Risk Assessment: Refined

Endangered Species Assessment for Proposed New Uses on Herbicide-Tolerant Corn and Soybean" (Docket #:  EPA-HQ-OPP-2014-0195-0009) for Enlist Duo.

49.     The EPA acknowledged the Center's June 26, 2014 FOIA request the same day and assigned it tracking number EPA-HQ-2014-007846.  The EPA assigned this request to the EPA's Office of Pesticide Programs ("EPA-OPP") FOIA Office.

50.     The EPA failed to issue a final determination within 20 business days of receiving the Center's FOIA Request, by July 25, 2014, as required by 5 U.S.C. § 552(a)(6)(A)(i).

51.     In a letter dated December 8, 2014, the Center requested that the EPA provide an estimated date of completion of a determination on EPA-HQ-2014-007846, as required by FOIA.

## FOIA Request: EPA-HQ-2015-000652

52.     On October 20, 2014, the Center sent a request pursuant to FOIA through FOIAOnline.regulations.gov, for records pertaining to the EPA's "no effect" findings for 168 species in 10 states, entitled "Addendum to 2,4-D Choline Salt Section 3 Risk assessment: Refined Endangered Species Assessment for Proposed New Uses on Herbicide-Tolerant Corn and Soybean for AR, KS, LA, MN, MS, MO, NE, ND, OK, TN" (Docket #:  EPA-HQ-OPP-2014-0195-2419).

53.     The EPA acknowledged the Center's October 20, 2014 FOIA request the same day and assigned it tracking number EPA-HQ-2015-000652.  The EPA assigned this request to the EPA-OPP FOIA Office.

54.     The EPA approved the Center's request for a fee waiver for the October 20, 2014 request on October 24, 2014.

55.     The EPA failed to issue a final determination within 20 business days of receiving the Center's FOIA Request, by November 18, 2014, as required by 5 U.S.C. § 552(a)(6)(A)(i).

## FOIA Fee Waiver Appeal: EPA-HQ-2014-008321

56.     On July 8, 2014, the EPA denied the Center's fee waiver request in connection

with FOIA EPA-HQ-2014-007846.

57.     On July 10, 2014, the Center appealed the EPA's denial of its fee waiver request

following the appeal procedures set forth in the EPA's regulations implementing FOIA, 40

C.F.R. § 2.104(j), as well as in the instructions contained in the EPA's fee waiver denial letter.

The EPA's online FOIA portal acknowledged receipt of the appeal and assigned it tracking

number EPA-HQ-2014-008321 ("Fee Waiver Appeal").

58.     On September 30, 2014, the Center sent an email to the EPA-OPP FOIA Office

requesting that the EPA respond to the Center's Fee Waiver Appeal, noting that over 60 working

days had passed since the appeal was filed.  The EPA did not respond to this email.

59.     On November 3, 2014, the Center sent via email to the EPA-OPP FOIA Office an

addendum to its fee waiver request for EPA-HQ-2014-007846 which consisted of extensive

material demonstrating the Center's ability to disseminate information to the public about

pesticides in general and Enlist Duo in particular.  The Center also included the EPA's October

24, 2014 letter approving a fee waiver for EPA-HQ-2015-000652.  The Center requested that the

EPA make a determination on the Center's Fee Waiver Appeal.

60.     On December 4, 2014, the EPA sent an email to the Center stating that the June

26, 2014 FOIA request was "a duplicate" of the Center's October 20, 2014 FOIA request.  The

EPA therefore said it was closing the June 26, 2014 FOIA request.

61.     Immediately on December 4, 2014, the Center responded to the EPA's closure of

the June 26, 2014 FOIA request, protesting that the two FOIA Requests were similar, but not

identical, as they concerned separate regulatory actions and the effects of Enlist Duo in separate

groups of states.  The Center again alerted the EPA that it had failed to respond to the Center's

Fee Waiver Appeal within 20 business days, as required by FOIA.  The Center also again

requested that the EPA provide an estimated date of completion for a final determination on both

the June 26, 2014 FOIA request and the October 20, 2014 FOIA request as required by 5 U.S.C.

§ 552(a)(7)(B)(ii).

62.     Also on December 4, 2014, the EPA responded to the Center's email, agreeing

that it would not close the June 26, 2014 request.  However, the EPA did not provide the Center

with an estimated date of completion for a determination on the FOIA Requests as required by 5

U.S.C. § 552(a)(7)(B)(ii), stating only that the Center's requests were "voluminous" and that the

EPA would "keep [the Center] informed of our progress to complete these requests."

63.     The EPA did not provide a final determination on the Center's Fee Waiver

Appeal until December 19, 2014.  Based on the information the Center provided in its appeal, the

EPA granted the Center's fee waiver.

### The EPA's Response to EPA-HQ-2014-007846 and EPA-HQ-2015-000652

64.     On February 20, 2015, eight months after the date of the Center's initial FOIA

request, the EPA finally sent its first "interim response letter" for both EPA-HQ-2014-007846

and EPA-HQ-2015-000652.

65.     The EPA sent additional interim response letters on March 12, 2015, March 13,

2015, and May 1, 2015.

66.     However, after May 1, 2015, EPA did not send any additional responses or

communications in connection with either of the Center's FOIA Requests.

67.     On October 2, 2015, five months after the EPA's May 1, 2015, interim response letter, the Center again requested an estimated date of completion of a determination on both of its FOIA Requests.

68.     The EPA sent final determination letters for both FOIA Requests on October 8, 2015.  In its determination letters, the EPA stated that it would not provide the Center with approximately 150 responsive records in their entirety, amounting to a total of approximately 500 pages.  The EPA claimed that it "determined [the records] to be internal deliberative and/or attorney-client privileged correspondence" and, on that basis, withheld them from FOIA's disclosure mandate pursuant to FOIA Exemption 5.  5 U.S.C. § 552(b)(5).

69.     The only records that EPA provided were some studies, a few emails largely discussing dates, and memoranda memorializing a meeting.  The EPA provided no records reflecting the agency's analysis of whether the benefits of Enlist Duo outweigh its risks, as FIFRA requires, no drafts of the Addendum to the Risk Assessment, and no emails discussing relevant studies or facts contained in the studies, or other emails.

70.     In its final determination, the EPA did not explain why FOIA Exemption 5 may be used to withhold about 500 pages of responsive records, such detail as why disclosure of the purportedly "deliberative" records would chill agency deliberations or whether any factual and/or non-exempt contents could be reasonably segregated and provided to the Center.

### Appeals of EPA's Response to EPA-HQ-2014-007846 and EPA-HQ-2015-000652

71.     The Center timely appealed the EPA's final determination on EPA-HQ-2014-007846 and EPA-HQ-2015-000652 by sending an appeal letter on November 6, 2015 ("FOIA Appeals").

72.     The EPA failed to acknowledge its receipt of the FOIA Appeals and failed to issue a determination within 20 business days of receipt of the FOIA Appeals, as required by 5 U.S.C. § 552(a)(6)(A)(ii).

73.     On December 11, 2015, the Center sent a letter notifying the EPA of its violations of FOIA, requesting an estimated date of completion for a determination on the FOIA Appeals, and offering to assist the EPA in making a determination on the FOIA Appeals.

74.     The EPA finally acknowledged the Center's FOIA Appeals by letters dated December 14, 2015.  The EPA assigned tracking number [EPA-HQ-2016-002055] to the appeal for EPA-HQ-2014-007846, and assigned tracking number [EPA-HQ-2016-002057] to the appeal for EPA-HQ-2015-000652.

75.     The EPA did not request additional information from the Center, has not notified the Center of any "unusual circumstances" that prevent it from complying with FOIA's deadline for a determination, and has not provided a date by which it expects to make a determination on the Center's FOIA Appeals.  *Id.* § 552(a)(6)(A), (B).

76.     As of this date, EPA's final determination on the Center's FOIA Appeals is 15 business days overdue.

77.     None of FOIA's nine exemptions to the statute's disclosure mandate apply to the withheld records that are responsive to the Center's FOIA Requests.  Thus, the EPA unlawfully invoked Exemption 5 in connection with the Center's FOIA Requests.

78.     The EPA repeatedly violated FOIA's determination deadlines and repeatedly failed to provide the Center with an estimated date of completion of a determination on its FOIA Requests and Appeals.

79.     The EPA failed to provide the Center with reasonably segregable portions of the requested records after deletion of any portions which may be lawfully withheld from disclosure under FOIA Exemption 5.

80.     As of this date, the EPA failed to provide final determinations on the Center's FOIA Appeals.

81.     The Center has been required to expend resources to prosecute this action.

## CLAIMS FOR RELIEF

### FIRST CLAIM FOR RELIEF
### VIOLATION OF THE FREEDOM OF INFORMATION ACT

### The EPA Failed to Comply with 5 U.S.C. § 552(a)(7)(B)(ii) (Estimated Completion Date)

82.     Plaintiff re-alleges and incorporates by reference the allegations made in all preceding paragraphs.

83.     Pursuant to 5 U.S.C. § 552(a)(7)(B)(ii), "[e]ach agency shall … establish a telephone line or Internet service that provides information about the status of a request to the person making the request … including an estimated date on which the agency will complete action on the request."

84.     The Center repeatedly asked the EPA for an estimated date of completion of a determination on its FOIA Requests and FOIA Appeals, and in so doing, invoked 5 U.S.C. § 552(a)(7)(B)(ii).

85.     The EPA repeatedly failed to provide an estimated date of completion of its determination on the following FOIA Requests and FOIA Appeals:

    a.     EPA-HQ-2014-007846 / EPA-HQ-2016-002055

    b.     EPA-HQ-2015-000652 / EPA-HQ-2016-0002957

86.     The Center's organizational activities have been adversely affected by the EPA's violations of FOIA's requirement that the EPA provide an estimated date of completion on a FOIA request and FOIA appeal.

## SECOND CLAIM FOR RELIEF
## VIOLATION OF THE FREEDOM OF INFORMATION ACT

### The EPA's Pattern, Practice, and Policy of Violating FOIA's Estimated Completion Date Requirement

87.     Plaintiff re-alleges and incorporates by reference the allegations made in all preceding paragraphs.

88.     Upon information and belief, the EPA's failure to provide estimated dates of completion of final determinations of Plaintiff's FOIA Requests and FOIA Appeals represents an ongoing policy, practice, or standard operating procedure ("SOP").

89.     A policy, practice, or SOP of refusing to provide estimated dates of completion to requesters is a violation of FOIA.  5 U.S.C. § 552(a)(7)(B)(ii).  Such a practice constitutes a failure to adequately respond for purposes of the broad equitable powers provided by FOIA to the Court.

90.     The Center is injured by the EPA's pattern and practice of disregarding FOIA's requirement to provide an estimated date of completion of a determination on its FOIA Requests.

91.     Based on the nature of the Center's organizational activities, it will undoubtedly continue to employ FOIA's provisions in record requests to the EPA in the foreseeable future.

92.     The Center's organizational activities will be adversely affected if the EPA is allowed to continue violating FOIA's requirement to provide an estimated date of completion of a determination on its FOIA Requests and FOIA Appeals, as it has in this case.

93.     Unless made subject to a declaration of the Center's legal rights by this Court, the EPA will continue to violate the Center's rights to receive estimated dates of completion of final determinations of FOIA requests and FOIA appeals under FOIA.

### THIRD CLAIM FOR RELIEF
### VIOLATION OF THE FREEDOM OF INFORMATION ACT

### The EPA Violated the Determination Deadline Mandated by FOIA

94.     Plaintiff re-alleges and incorporates by reference the allegations made in all preceding paragraphs.

95.     The Center has a statutory right to a final determination from the EPA on its FOIA Requests and FOIA Appeals in a manner that complies with FOIA.  The EPA violated the Center's rights in this regard by unlawfully delaying its response beyond the deadlines that FOIA mandates, 5 U.S.C. § 552(a)(6)(A)(i), (ii), for the following FOIA requests and FOIA appeals:

        a.     EPA-HQ-2014-008321

        b.     EPA-HQ-2014-007846 / EPA-HQ-2016-002055

        c.     EPA-HQ-2015-000652 / EPA-HQ-2016-0002957

96.     The Center's organizational activities will be adversely affected if the EPA is allowed to continue violating FOIA's decision deadlines as it has in this case.

97.     Unless enjoined and made subject to a declaration of the Center's legal rights by this Court, the EPA will continue to violate the Center's rights to receive public records under FOIA.

## FOURTH CLAIM FOR RELIEF
## VIOLATION OF THE FREEDOM OF INFORMATION ACT

### The EPA's Pattern, Practice, and Policy of Violating FOIA's Determination Deadlines

98.     Plaintiff re-alleges and incorporates by reference the allegations made in all preceding paragraphs.

99.     Upon information and belief, the EPA's violation of FOIA's determination deadlines in responding to Plaintiff's FOIA Requests and FOIA Appeals represents an ongoing policy, practice, or SOP.

100.     A policy, practice, or SOP of consistently violating FOIA's determination deadlines constitutes unreasonable delay for purposes of the broad equitable powers provided by FOIA to the Court.

101.     The Center is injured by the EPA's pattern and practice of disregarding statutory determination deadlines set out in FOIA.  5 U.S.C. § 552(a)(6)(A)(i), (ii).

102.     Based on the nature of the Center's organizational activities, it will undoubtedly continue to employ FOIA's provisions in record requests to the EPA in the foreseeable future.

103.     The Center's organizational activities will be adversely affected if the EPA is allowed to continue violating FOIA's determination deadlines as it has in this case.

104.     Unless enjoined and made subject to a declaration of the Center's legal rights by this Court, the EPA will continue to violate the Center's rights to receive public records under FOIA.

## FIFTH CLAIM FOR RELIEF
## VIOLATION OF THE FREEDOM OF INFORMATION ACT

### The EPA Failed to Conduct an Adequate Search

105.     Plaintiff re-alleges and incorporates by reference the allegations made in all preceding paragraphs.

106.     The Center has a statutory right to have the EPA process its FOIA Requests in a manner that complies with FOIA.  5 U.S.C. § 552(a)(3).  The EPA violated the Center's rights in this regard when it unlawfully failed to undertake a search that is reasonably calculated to locate all records that are responsive to the following FOIA requests:

  a.     EPA-HQ-2014-007846

  b.     EPA-HQ-2015-000652

107.     The EPA provided no records reflecting the agency's analysis of whether the benefits of Enlist Duo outweigh its risks, as FIFRA requires, no drafts of the Addendum to the Risk Assessment, and no emails discussing relevant studies or facts contained in the studies, or other emails.

108.     Based on the nature of the Center's organizational activities, it will undoubtedly continue to employ FOIA's provisions in record requests to the EPA in the foreseeable future.

109.     The Center's organizational activities will be adversely affected if the EPA is allowed to continue violating FOIA's requirement to undertake a search that is reasonably calculated to locate records that are responsive to the Center's FOIA Requests.

110.     Unless enjoined and made subject to a declaration of the Center's legal rights by this Court, the EPA will continue to violate the Center's rights to receive public records under FOIA.

## SIXTH CLAIM FOR RELIEF
## VIOLATION OF THE FREEDOM OF INFORMATION ACT

### The EPA Unlawfully Withheld Records Responsive to the Center's FOIA Requests

111.    Plaintiff re-alleges and incorporates by reference the allegations made in all preceding paragraphs.

112.    The Center has a statutory right to the records it seeks, and there is no legal basis for the EPA to assert that any of FOIA's nine exemptions to mandatory disclosure apply to withhold these records from the Center.  *See* 5 U.S.C. § 552(b)(1)-(9).

113.    The EPA violated the Center's rights in this regard by failing to comply with FOIA's decision deadlines and by withholding records that are responsive to the following FOIA Requests based on the unlawful and overly broad application of FOIA's Exemption 5, 5 U.S.C. § 552(b)(5):

    a.    EPA-HQ-2014-007846

    b.    EPA-HQ-2015-000652

114.    Based on the nature of the Center's organizational activities, it will undoubtedly continue to employ FOIA's provisions in record requests to the EPA in the foreseeable future.

115.    The Center's organizational activities will be adversely affected if the EPA continues to violate FOIA's disclosure provisions as it has in this case.

116.    Unless enjoined and made subject to a declaration of Plaintiff's legal rights by this Court, the EPA will continue to violate Plaintiff's rights to receive public records under FOIA.

## SEVENTH CLAIM FOR RELIEF
## VIOLATION OF THE FREEDOM OF INFORMATION ACT

### The EPA Failed to Provide Reasonably Segregable Portions of Any Lawfully Exempt Records

117.    Plaintiff re-alleges and incorporates by reference the allegations made in all preceding paragraphs.

118.    The Center has a statutory right to any reasonably segregable portion of a record that contains information that is subject to any of FOIA's exemptions.  5 U.S.C. § 552(b).

119.    The EPA violated the Center's rights in this regard by unlawfully withholding reasonably segregable portions of any lawfully exempt records that are responsive to the following FOIA Requests:

     a.    EPA-HQ-2014-007846

     b.    EPA-HQ-2015-000652

120.    Based on the nature of the Center's organizational activities, it will undoubtedly continue to employ FOIA's provisions in record requests to the EPA in the foreseeable future.

121.    The Center's organizational activities will be adversely affected if the EPA is allowed to continue violating FOIA's disclosure provisions as it has in this case.

122.    Unless enjoined and made subject to a declaration of the Center's legal rights by this Court, the EPA will continue to violate the Center's rights to receive public records under FOIA.

## EIGHTH CLAIM FOR RELIEF
## VIOLATION OF THE ADMINISTRATIVE PROCEDURE ACT
### (In the Alternative to the First through Seventh Claims)

### The EPA's Violations of FOIA's Requirements Constitutes Agency Action Unlawfully Withheld or Unreasonably Delayed

123.     Plaintiff re-alleges and incorporates by reference the allegations made in all preceding paragraphs.

124.     The EPA unlawfully withheld agency action by failing to comply with the mandates of FOIA consequent to its failure and refusal to:  (1) provide the Center with an estimated date of completion of a determination on its FOIA Requests and FOIA Appeals; (2) issue a timely final determination on the Center's FOIA Requests and FOIA Appeals; (3) undertake a search that is reasonably calculated to locate all records that are responsive to the Center's FOIA Requests; (4) provide the Center with records that are responsive to its FOIA Requests, which are not within the scope of any of FOIA's exemptions to mandatory disclosure; and (5) provide the Center with reasonably segregable portions of records which may be subject to an exemption.  The EPA's failures constitute agency action that is unlawfully withheld and therefore actionable pursuant to the APA, 5 U.S.C. § 706(1).

125.     Alternatively, the EPA unreasonably delayed agency action by failing to comply with the mandates of FOIA consequent to its failure and refusal to:  (1) provide the Center with an estimated date of completion of a determination on its FOIA Requests and FOIA Appeals; (2) issue a timely final determination on the Center's FOIA Requests and FOIA Appeals; (3) undertake a search that is reasonably calculated to locate all records that are responsive to the Center's FOIA Requests; (4) provide the Center with records that are responsive to its FOIA Requests, which are not within the scope of any of FOIA's exemptions to mandatory disclosure; and (5) provide the Center with reasonably segregable portions of records which may be subject

to an exemption.  EPA's failures constitute agency action unreasonably delayed and therefore

actionable pursuant to the APA, 5 U.S.C. § 706(1).

126.    As alleged above, the EPA's failure to comply with the mandates of FOIA has

injured the Center's interests in public oversight of governmental operations and is in violation

of its statutory duties under the APA.

127.    The Center has suffered a legal wrong as a result of the EPA's failure to comply

with the mandates of FOIA.  As alleged above, the EPA violated its statutory duties under the

APA and injured the Center's interests in public oversight of governmental operations.

128.    The Center has no other adequate remedy at law to redress the violations noted

above.

129.    Plaintiff is entitled to judicial review under the APA, 5 U.S.C. § 702.

### NINTH CLAIM FOR RELIEF
### VIOLATION OF THE ADMINISTRATIVE PROCEDURE ACT
#### (In the Alternative to the First through Eighth Claims)

### The EPA's Violations of FOIA's Requirements Is Arbitrary, Capricious, an Abuse of Discretion, or Otherwise Not in Accordance with Law

130.    Plaintiff re-alleges and incorporates by reference the allegations made in all

preceding paragraphs.

131.    The EPA violated FOIA's statutory mandates, consequent to its repeated failure

and refusal to:  (1) provide the Center with an estimated date of completion of a determination on

its FOIA Requests and FOIA Appeals; (2) issue a timely final determination on the Center's

FOIA Requests and FOIA Appeals; (3) undertake a search that is reasonably calculated to locate

all records that are responsive to the Center's FOIA Requests; (4) provide the Center with

records that are responsive to its FOIA Requests, which are not within the scope of any of

FOIA's exemptions to mandatory disclosure; and (5) provide the Center with reasonably

segregable portions of records which may be lawfully subject to an exemption.  By repeatedly violating FOIA's statutory mandates, EPA's actions are arbitrary, capricious, an abuse of discretion, or not in accordance with the law and therefore actionable pursuant to the APA, 5 U.S.C. § 706(2)(A).

132.    As alleged above, the EPA's repeated failure to comply with the mandates of FOIA has injured the Center's interests in public oversight of governmental operations and is in violation of the agency's statutory duties under the APA.

133.    The Center has suffered a legal wrong as a result of EPA's failure to comply with the mandates of FOIA.  As alleged above, EPA violated its statutory duties under the APA and injured the Center's interests in public oversight of governmental operations.

134.    The Center has no other adequate remedy at law to redress the violations noted above.

135.    The Center is entitled to judicial review under the APA, 5 U.S.C. § 702.

## PRAYER FOR RELIEF

WHEREFORE, Plaintiff prays that this Court:

136.    Order Defendant to conduct a search that is reasonably calculated to locate all records that are responsive to the Center's FOIA Requests, with the cut-off date for such searchable date being the date the new search is conducted, and provide Plaintiff with all responsive records and reasonably segregable portions of lawfully exempt records sought in this action.

137.    Declare that Defendant's failure to provide Plaintiff with an estimated date of completion of a determination on its FOIA Requests and FOIA Appeals is unlawful under FOIA, 5 U.S.C. § 552(a)(7)(B)(ii), or alternatively, is agency action that has been unlawfully withheld

or unreasonably delayed, 5 U.S.C. § 706(1), or is arbitrary, capricious, an abuse of discretion, or not in accordance with law, 5 U.S.C. § 706(2).

138.    Declare that Defendant's failure to undertake a search that is reasonably calculated to locate all records that are responsive to Plaintiff's FOIA Requests, as alleged above, is unlawful under FOIA, U.S.C. § 552(a)(6)(A)(i), or in the alternative, is agency action that has been unlawfully withheld or unreasonably delayed, 5 U.S.C. § 706(1), or is arbitrary, capricious, an abuse of discretion, or not in accordance with law, 5 U.S.C. § 706(2).

139.    Declare that Defendant's failure to disclose the requested records to Plaintiff is unlawful under FOIA, 5 U.S.C. § 552(a)(6)(A)(i), or in the alternative, is agency action that has been unlawfully withheld or unreasonably delayed, 5 U.S.C. § 706(1), or is arbitrary, capricious, an abuse of discretion, or not in accordance with law, 5 U.S.C. § 706(2).

140.    Declare that Defendant's failure to timely make a determination on Plaintiff's FOIA Requests and FOIA Appeals is unlawful under FOIA, 5 U.S.C. § 552(a)(6)(A)(i) and (ii), or in the alternative, is agency action that has been unlawfully withheld or unreasonably delayed, 5 U.S.C. § 706(1), or is arbitrary, capricious, an abuse of discretion, or not in accordance with law, 5 U.S.C. § 706(2)(A).

141.    Declare that Defendant's failure to properly apply the privileges under Exemption 5 of FOIA, 5 U.S.C. § 552(b)(5), is unlawful under FOIA, or in the alternative, is agency action that has been unlawfully withheld or unreasonably delayed, 5 U.S.C. § 706(1), or is arbitrary, capricious, an abuse of discretion, or not in accordance with law, 5 U.S.C. § 706(2).

142.    Declare that Defendant's failure to provide the Center with reasonably segregable portions of records which may be lawfully subject to a FOIA exemption, as alleged above, is unlawful under FOIA, U.S.C. § 552(a)(7)(b), or in the alternative, is agency action that has been

unlawfully withheld or unreasonably delayed, 5 U.S.C. § 706(1), or is arbitrary, capricious, an abuse of discretion, or not in accordance with law, 5 U.S.C. § 706(2).

143.    Award Plaintiff its costs and reasonable attorney fees pursuant to 5 U.S.C. § 552(a)(4)(E) or 28 U.S.C. § 2412.

144.    Grant such other and further relief as the Court may deem just and proper.


DATED: February 3, 2016                    Respectfully submitted,


*/s/ Margaret E. Townsend*
Margaret E. Townsend (OR Bar No. 144463)
*Pro hac vice admission pending*
Center for Biological Diversity
P.O. Box 11374
Portland, OR 97211-0374
(971) 717-6409
mtownsend@biologicaldiversity.org


*/s/ Amy R. Atwood*
Amy R. Atwood (D.C. Bar No. 470258)
Center for Biological Diversity
P.O. Box 11374
Portland, OR 97211-0374
(971) 717-6401
atwood@biologicaldiversity.org

*Attorneys for Plaintiff*

27