## UNITED STATES DISTRICT COURT
## FOR THE DISTRICT OF COLUMBIA

| | |
|---|---|
| **CENTER FOR BIOLOGICAL DIVERSITY,** ) | |
| ) | |
| **Plaintiff,** ) | |
| ) | |
| **v.** ) | |
| ) | **Case No. 16-cv-175 (BAH)** |
| **UNITED STATES ENVIRONMENTAL** ) | |
|   **PROTECTION AGENCY,** ) | |
| ) | |
| **Defendant.** ) | |
| ) | |

## <u>DEFENDANT'S MOTION FOR SUMMARY JUDGMENT</u>

Plaintiff, Center for Biological Diversity, has brought this action against Defendant, the Environmental Protection Agency ("EPA"), under the Freedom of Information Act ("FOIA"), 5 U.S.C. § 552, as amended, and Administrative Procedure Act, challenging the responses by EPA to two FOIA requests made by Plaintiff.  As of the date of this filing, EPA has satisfied all of its obligations with respect to Plaintiff's FOIA requests.  EPA has conducted an adequate search for responsive records and has produced to Plaintiff all of the responsive records to which it is entitled.  As there are no material facts in dispute, Defendant respectfully moves this Court pursuant to Federal Rule of Civil Procedure 56 for summary judgment as to all claims asserted in this action.  Defendant respectfully submits that the attached memorandum of points and authorities, supporting declaration and exhibits thereto establish that EPA is entitled to the relief it seeks.

Respectfully submitted,


CHANNING D. PHILLIPS, D.C. Bar #415793
United States Attorney

DANIEL F. VAN HORN, D.C. Bar #924092
Chief, Civil Division

By: _____/s/_____
JEREMY S. SIMON
DC BAR # 447956
Assistant United States Attorney
555 4th Street, N.W.
Washington, D.C. 20530
Tel: (202) 252-2528
Jeremy.Simon@usdoj.gov

## UNITED STATES DISTRICT COURT
## FOR THE DISTRICT OF COLUMBIA

| | |
|---|---|
| **CENTER FOR BIOLOGICAL DIVERSITY,** )  | |
|  ) | |
| **Plaintiff,** ) | |
|  ) | |
| **v.** ) | |
|  ) | **Case No. 16-cv-175 (BAH)** |
| **UNITED STATES ENVIRONMENTAL** ) | |
| **PROTECTION AGENCY,** ) | |
|  ) | |
| **Defendant.** ) | |
|  ) | |

### DEFENDANT'S STATEMENT OF MATERIAL FACTS NOT IN GENUINE DISPUTE

Pursuant to Local Civil Rule 7(h), Defendant respectfully submits this Statement of Material Facts Not in Genuine Dispute in support of Defendant's Motion for Summary Judgment.

### Request No. 2014-007846

1.   On June 26, 2014, CBD submitted a FOIA request to the EPA seeking "[a]ll documents and correspondence related to the Environmental Protection Agency's 'Addendum to 2,4-D Choline Salt Section 3 Risk Assessment: Refined Endangered Species Assessment for Proposed New Uses on Herbicide-Tolerant Corn and Soybean' . . . for the new Enlist Duo product." (Compl. ¶ 48; Ingram Decl. ¶ 8 and Ex. B thereto).

2.   This request was assigned No. 2014-007846. (Compl. ¶ 49)

### Request No. 2014-000652

3.    On October 20, 2014, CBD submitted its second FOIA request to EPA seeking "[a]ll documents and correspondence related to the Environmental Protection Agency's 'Addendum to 2,4-D Choline Salt Section 3 Risk Assessment: Refined Endangered Species Assessment for

Proposed New Uses on Herbicide-Tolerant Corn and Soybean for AR, KS, LA, MN, MS, MO, NE, ND, OK, TN.'" (Ingram Decl. ¶ 9 and Ex. C thereto)

4.   The October 2014 request was assigned No. 2014-000652.  (Compl. ¶ 53)

**Processing of the FOIA Requests**

5.   On December 4, 2014, EPA sent an email to CBD stating that the first FOIA request was a duplicate of the center's second FOIA request. EPA therefore said it was closing the first FOIA request. Following an email exchange, it was decided that both FOIA requests would stand and searches for documents and correspondences relating to both registration decisions would be conducted.  (Ingram Decl. ¶ 12)

6.   On December 17, 2014, EPA's FOIA office had a telephone conversation with CBD in which the search parameters for the two requests were discussed.  (Ingram Decl. ¶ 13)

7.   It was agreed during the December 17, 2014 conversation that the search for the requests would include documents through September 26, 2014.  (Ingram Decl. ¶ 13)

8.    In early 2015, EPA began to make a rolling production of non-exempt responsive records to CBD.  (Ingram Decl. ¶¶ 17-21)

9.   By letter dated October 8, 2015, EPD notified CBD that approximately 150 emails and predecisional documents obtained during its search were determined to be internal deliberative and/or attorney-client privileged correspondence and were being withheld under FOIA Exemption 5.   EPA notified CBD at this time that this response concluded the processing of CBD's two FOIA requests.  (Ingram Decl. ¶ 21)

10.   EPA thereafter determined that responsive records could reasonably be expected to exist beyond the custodians of the original search.  (Ingram Decl. ¶¶ 23-24)

11.   An additional search was conducted using a centralized email search tool that focused on certain additional custodians, and that also included the custodians who were the subject of the original search.  (Ingram Decl. ¶ 24)

12.   Additional documents were located from this search and were processed and released to the extent non-exempt under FOIA by letter dated August 8, 2016, thereby completing the agency's response to the FOIA request.  (Ingram Decl. ¶ 26)

**Segregability**

13. All reasonably segregable, non-exempt responsive documents subject to FOIA have been produced to the Plaintiff.   (Ingram Decl. ¶ 38-39)

Respectfully submitted,

CHANNING D. PHILLIPS, D.C. Bar #415793
United States Attorney
for the District of Columbia

DANIEL F. VAN HORN, D.C. Bar #924092
Chief, Civil Division

By:   /s/
JEREMY S. SIMON
DC BAR # 447956
Assistant United States Attorney
555 4th Street, N.W.
Washington, D.C. 20530
Tel: (202) 252-2528
Jeremy.Simon@usdoj.gov

**UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLUMBIA**

| | |
|---|---|
| **CENTER FOR BIOLOGICAL DIVERSITY,** | ) |
| | ) |
| **Plaintiff,** | ) |
| | ) |
| **v.** | ) |
| | ) **Case No. 16-cv-175 (BAH)** |
| **UNITED STATES ENVIRONMENTAL** | ) |
| **PROTECTION AGENCY,** | ) |
| | ) |
| **Defendant.** | ) |
| | ) |

**MEMORANDUM IN SUPPORT OF
DEFENDANT'S MOTION FOR SUMMARY JUDGMENT
AND IN OPPOSITION TO PLAINTIFF'S MOTION**

Plaintiff, Center for Biological Diversity ("CBD") has brought this action against Defendant, the United States Environmental Protection Agency ("EPA"), under the Freedom of Information Act ("FOIA"), 5 U.S.C. § 552, as amended, challenging the responses to FOIA requests to EPA seeking documents and correspondence related to two specified "Addendum" issued by EPA concerning endangered species risk assessments for the new Enlist Duo product. (Compl. ¶¶ 4-6; Ex. B and C to Ingram Decl.)

The Complaint asserts seven counts under FOIA: (1) that EPA failed to provide CBD with an estimated date of completion of its processing of the FOIA requests and FOIA appeals; (2) that EPA has engaged in a pattern and practice of violating FOIA's estimated completion date requirement; (3) that EPA failed to provide a final determination within the time period provided under FOIA; (4) that EPA has engaged in a pattern and practice of violating the final determination deadline; (5) that EPA failed to conduct an adequate search; (6) that EPA unlawfully withheld responsive records; and (7) that EPA failed to provide reasonably

segregable portions of any lawfully exempt records.  In addition, the Complaint purports to assert, in the alternative, two counts (Counts VIII and IX) under the Administrative Procedure Act based on the same alleged conduct.

Summary judgment should be granted on these claims because the EPA has conducted a reasonable search for responsive records, and has produced all non-exempt, segregable documents subject to FOIA.  In addition, to the extent the Complaint purports to assert a claim under the APA, or under FOIA relating to EPA's alleged failure to meet certain deadlines during the administrative process, those claims (whether stated as a "pattern and practice" or otherwise) fail to state a claim, are moot and otherwise are not subject to judicial review.

## FACTUAL BACKGROUND

The accompanying Statement of Material Facts addresses the processing of these requests by EPA and is incorporated herein by reference.

In addition, by way of further background, the subject matter of the requests at issue concerns the EPA's review of whether a pesticide, Enlist Duo, may be used in certain states.  As part of that process, the EPA evaluated Enlist Duo's potential use in two different groups of states.  EPA issued a Risk Assessment for each group of states with Addendums that explained EPA's analysis and valuation of the risks for use of Enlist Duo.   (Ingram Decl. ¶¶ 6-7) Plaintiff's FOIA request for "[a]ll documents and correspondence related to" each Addendum, therefore, sought information underlying EPA's deliberations in evaluating and creating the two Addendums to the risk assessments.   Because of the type of information sought in the FOIA requests, a not insignificant portion of the responsive material implicated FOIA Exemption 5 as explained more fully in the accompanying Ingram Declaration.   The other exemption implicated

– Exemption 6 – was applied only to redact a personal telephone number that appeared in a document.

## LEGAL STANDARD

Summary judgment is appropriate when the pleadings and evidence "show[] that there is no genuine issue as to any material fact and that the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a); *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 247 (1986); *Celotex Corp. v. Catrett*, 477 U.S. 317, 322 (1986); *Tao v. Freeh*, 27 F.3d 635, 638 (D.C. Cir. 1994). The party seeking summary judgment must demonstrate the absence of a genuine issue of material fact. *See Celotex*, 477 U.S. at 248. A genuine issue of material fact is one that "might affect the outcome of the suit under the governing law." *Anderson*, 477 U.S. at 248. Once the moving party has met its burden, the nonmoving party "may not rest upon the mere allegations or denials of his pleading, but . . . must set forth specific facts showing that there is a genuine issue for trial." *Anderson*, 477 U.S. at 248.

The "vast majority" of FOIA cases are decided on motions for summary judgment. *See Brayton v. Office of U.S. Trade Rep.*, 641 F.3d 521, 527 (D.C. Cir. 2011); *Media Research Ctr. v. U.S. Dep't of Justice*, 818 F. Supp. 2d 131, 136 (D.D.C. 2011) ("FOIA cases typically and appropriately are decided on motions for summary judgment."); *Citizens for Responsibility & Ethics in Washington v. U.S. Dep't of Labor*, 478 F. Supp. 2d 77, 80 (D.D.C. 2007) ("*CREW*"). An agency may be entitled to summary judgment in a FOIA case if it demonstrates that no material facts are in dispute, it has conducted an adequate search for responsive records and each responsive record that it has located either has been produced to the plaintiff or is exempt from disclosure. *See Weisberg v. Dep't of Justice*, 627 F.2d 365, 368 (D.C. Cir. 1980).

To meet its burden, a defendant may rely on reasonably detailed and non-conclusory declarations. *See McGehee v. C.I.A.*, 697 F.2d 1095, 1102 (D.C. Cir. 1983); *Vaughn v. Rosen*, 484 F.2d 820 (D.C. Cir. 1973), *cert denied*, 415 U.S. 977 (1974); *Media Research Ctr.*, 818 F. Supp. 2d at 137. "[T]he Court may award summary judgment solely on the basis of information provided by the department or agency in declarations when the declarations describe 'the documents and the justifications for nondisclosure with reasonably specific detail, demonstrate that the information withheld logically falls within the claimed exemption, and are not controverted by either contrary evidence in the record nor by evidence of agency bad faith.'" *CREW*, 478 F. Supp. 2d at 80 (quoting *Military Audit Project v. Casey*, 656 F.2d 724, 738 (D.C. Cir. 1981)). "[A]n agency's justification for invoking a FOIA exemption is sufficient if it appears 'logical' or 'plausible.'" *Media Research Ctr.*, 818 F. Supp. 2d at 137 (quoting *Larson v. Dep't of State*, 565 F.3d 857, 862 (D.C. Cir. 2009)).

## ARGUMENT

The FOIA requires that an agency release all records responsive to a properly submitted request unless such records are protected from disclosure by one or more of the Act's nine exemptions. 5 U.S.C. § 552(b); *U.S. Dep't of Justice v. Tax Analysts*, 492 U.S. 136, 150-51 (1989). Once the court determines that an agency has released all non-exempt material, it has no further judicial function to perform under the FOIA and the FOIA claim is moot. *Perry v. Block*, 684 F.2d 121, 125 (D.C. Cir. 1982); *Muhammad v. U.S. Customs & Border Prot.*, 559 F. Supp. 2d 5, 7-8 (D.D.C. 2008). As demonstrated below, Defendant satisfied its obligation to conduct adequate searches for records responsive to Plaintiff's FOIA requests and properly withheld exempt information pursuant to applicable FOIA exemptions 5 and 6.

I.      **EPA PROVIDED ALL REASONABLY SEGREGABLE, NON-EXEMPT RESPONSIVE DOCUMENTS FOLLOWING A REASONABLE SEARCH AND THEREFORE SUMMARY JUDGMENT SHOULD BE GRANTED ON COUNTS V-VII.**

A.      **Defendant Conducted Searches Reasonably Calculated to Uncover Responsive Records in Response to the Requests**

Under the FOIA, an agency must undertake a search that is "reasonably calculated to uncover all relevant documents." *Weisberg v. Dep't of Justice*, 705 F.2d 1344, 1351 (D.C. Cir. 1983); *see Oglesby v. Dep't of the Army*, 920 F.2d 57, 68 (D.C. Cir. 1990) ("[T]he agency must show that it made a good faith effort to conduct a search for the requested records, using methods which can be reasonably expected to produce the information requested."). A search is not inadequate merely because it failed to "uncover[] every document extant." *SafeCard Servs., Inc. v. S.E.C.*, 926 F.2d 1197, 1201 (D.C. Cir. 1991); *see Judicial Watch v. Rossotti*, 285 F. Supp. 2d 17, 26 (D.D.C. 2003) (noting that "[p]erfection is not the standard by which the reasonableness of a FOIA search is measured"). Rather, a search is inadequate only if the agency fails to "show, with reasonable detail, that the search method . . . was reasonably calculated to uncover all relevant documents." *Oglesby*, 920 F.2d at 68. An agency, moreover, is not required to examine "virtually every document in its files" to locate responsive records." *Steinberg v. Dept. of Justice*, 23 F.3d 548, 552 (D.C. Cir. 1994; *see also Hall v. U.S. Dep't of Justice*, 63 F. Supp. 2d 14, 17-18 (D.D.C. 1999) (finding that agency need not search for records concerning subject's husband even though such records may have also included references to subject). Rather, as here, it is appropriate for an agency to search for responsive records in accordance with the manner in which its records are maintained. *Greenberg v. Department of Treasury*, 10 F. Supp. 2d 3, 13 (D.D.C. 1998).

A FOIA requester also has an obligation to "reasonably describe" the records sought and, when requested, to provide additional information to assist the agency in identifying the records sought. *Latham v. Department of Justice,* 658 F. Supp. 2d 155, 160-61 (D.D.C. 2009). FOIA requests for "all documents" regarding a subject matter are improper when they fail to reasonably describe the records sought or are unduly burdensome to process. *Id.* at 161-62. An agency "'need not honor a request that requires an unreasonably burdensome search.'" *Id.* at 161.

Once an agency demonstrates the adequacy of its search, the agency's position can be rebutted "only by showing that the agency's search was not made in good faith." *Maynard v. C.I.A.*, 986 F.2d 547, 560 (1st Cir. 1993). Hypothetical assertions are insufficient to raise a material question of fact with respect to the adequacy of an agency's search. *Oglesby*, 920 F.2d at 67 n.13. "Agency affidavits enjoy a presumption of good faith that withstands purely speculative claims about the existence and discoverability of other documents." *Chamberlain v. U.S. Dep't of Justice*, 957 F. Supp. 292, 294 (D.D.C. 1997), *aff'd*, 124 F.3d 1309 (D.C. Cir. 1997).

In response to the FOIA requests at issue, EPA identified offices reasonably likely to have responsive information and those offices conducted a reasonable search for responsive records. The request sought documents related to two specified Addendum (referred to in the requests by their specific title), which CBD sought, according to the Complaint, to understand the basis for EPA's "no effect" findings underlying its decision to register, or propose to register, Enlist Duo in certain states. (Compl. ¶¶ 45-48) Specifically, on October 15, 2014, EPA decided to register Enlist Duo in six states (Illinois, Indiana, Iowa, Ohio, South Dakota, and Wisconsin), and also proposed to register Enlist Duo in 10 additional states (EPA ultimately amended the

registration for use in only 9 of the 10 proposed states).  (Compl. ¶¶ 46-47; Ingram Decl. ¶¶ 6-7 and n. 2))

EPA determined that the office likely to have responsive information was EPA's Office of Pesticide Programs ("OPP") and, specifically, the Environmental Fate and Effects Division of OPP because the request related to specific documents that were authored by EFED.  (Ingram Decl. ¶ 14)  EPA collected documents from relevant custodians within this Division of OPP and also conducted a supplemental search of the custodians' email using a centralized email search program.  (Ingram Decl. ¶¶ 14, 23-24)   In addition, EPA identified additional custodians (i.e., attorneys involved in reviewing and revising documents) and conducted a search of those individuals' email using the centralized search program.  (Ingram Decl. ¶¶ 23-24)   Based on the parties' agreement, the original search extended through September 26, 2014, and the supplemental search encompassed that same time period. (Ingram Decl. ¶ 24).

Thus, EPA conducted a reasonable search for responsive documents.  *See Larson v. Dep't of State*, 565 F.3d 857, 869 (D.C. Cir. 2009) (observing that the adequacy of an agency's search "is measured by the reasonableness of the effort in light of the specific request"); *Am. Immigration Council v. U.S. Dep't of Homeland Sec.*, No. 11-1971 (JEB), 2012 WL 5928643, at *4 (D.D.C. Nov. 27, 2012) (finding that agency's methodology was "sound" where agency compared the FOIA request to its program offices' functions in order to determine which component offices to search).

To the extent Plaintiff speculates that additional documents might exist that were not located, such speculation is not sufficient to call into question the reasonableness of EPA's search. *SafeCard Servs., Inc. v. S.E.C.*, 926 F.2d 1197, 1201 (D.C. Cir. 1991); *see Judicial Watch v. Rossotti*, 285 F. Supp. 2d 17, 26 (D.D.C. 2003) (noting that "[p]erfection is not the standard by

which the reasonableness of a FOIA search is measured"). Accordingly, the Court should find that the Defendant conducted a reasonable search and grant summary judgment to Defendant on that issue.

**B.      Defendant Properly Applied Exemptions to Withhold Information**

**1.      Defendant Properly Withheld Information Under Exemption 5**

Exemption 5 of FOIA protects "inter-agency or intra-agency memorandums or letters which would not be available by law to a party other than an agency in litigation with the agency." 5 U.S.C. § 552(b)(5). This exemption shields documents of the type that would be privileged in the civil discovery context, including materials protected by the attorney-client privilege and the executive deliberative process privilege. *NLRB v. Sears, Roebuck & Co.*, 421 U.S. 132, 149 (1975); *see Judicial Watch, Inc. v. Dep't of Justice*, 365 F.3d 1108, 1113 (D.C. Cir. 2004); *Rockwell Intern. Corp. v. DOJ*, 235 F.3d 598, 601 (D.C. Cir. 2001).

The deliberative process privilege is designed to prevent injury to the quality of agency decisions by (1) encouraging open, frank discussions on matters of policy between subordinates and superiors; (2) protecting against premature disclosure of proposed policies before they are adopted; and (3) protecting against public confusion that might result from the disclosure of reasons and rationales that were not in fact ultimately the grounds for an agency's decision. *See Sears, Roebuck, supra,* 421 U.S. at 151-53; *Coastal States Gas Corp. v. U.S. Dep't of Energy*, 617 F.2d 854, 866 (D.C. Cir. 1980); *Citizens for Responsibility and Ethics in Washington v. U.S. Dep't of Homeland Security*, 648 F. Supp. 2d 152, 156 (D.D.C. 2009); *FPL, supra,* 698 F. Supp. 2d at 81.

To invoke the deliberative process privilege, an agency must show that the exempt document is both pre-decisional and deliberative. *Access Reports v. U.S. Dep't of Justice*, 926

F.2d 1192, 1194 (D.C. Cir. 1991); *Coastal States Gas*, *supra,* 617 F.2d at 868; *Tax Analysts v. IRS*, 117 F.3d 607, 616 (D.C.Cir.1997).   For a document to be pre-decisional, it must be antecedent to the adoption of an agency policy.   *See Jordan v. U.S. Dep't of Justice*, 591 F.2d 753, 774 (D.C. Cir. 1978) (en banc); *see also In re Sealed Case*, 121 F.3d 729, 737 (D.C.Cir.1997) ("The deliberative process privilege does not shield documents that simply state or explain a decision the government has already made[.]").   To show that a document is pre-decisional, however, the agency need not identify a specific final agency decision; it is sufficient to establish "'what deliberative process is involved, and the role played by the documents at issue in the course of that process.'"   *Heggestad v. United States Dep't of Justice*, 182 F. Supp. 2d 1, 7 (D.D.C. 2000) (quoting *Coastal States Gas*, *supra*, 617 F.2d at 868); *see Gold Anti-Trust Action Committee v. Board of Governors ("GATA"),* 2011 U.S. Dist. LEXIS 10319 at *22 (D.D.C., Feb. 3, 2011) ("even if an internal discussion does not lead to adoption of a specific government policy, its protection under Exemption 5 is not foreclosed as long as the document was generated as part of a definable decision-making process.").

A document is "deliberative" if it "'reflects the give-and-take of the consultative process.'"   *McKinley v. FDIC,* 744 F. Supp. 2d 128, 138 (D.D.C. 2010).   Thus, "'pre-decisional materials are not exempt merely because they are pre-decisional; they also must be part of the agency give-and-take of the deliberative process by which the decision itself is made.'"   *Jowett, Inc. v. U.S. Dept. of the Navy*, 729 F. Supp. 871, 875 (D.D.C. 1989) (quoting *Vaughn v. Rosen*, 523 F.2d 1136, 1144 (D.C Cir. 1975)).   The privilege protects factual material if it is "inextricably intertwined" with deliberative material, *FPL,* 698 F. Supp. 2d at 81, or if disclosure "would 'expose an agency's decision-making process in such a way as to discourage candid discussion within the agency and thereby undermine the agency's ability to perform its

functions.'" *Quarles* v. *Dep't of Navy*, 893 F.2d 390, 392 (D.C. Cir. 1990)) (quoting *Dudman Communications Corp.* v. *Dep't of Air Force*, 815 F.2d 1565, 1568 (D.C. Cir. 1987).   "The 'key question' in identifying 'deliberative' material is whether disclosure of the information would 'discourage candid discussion within the agency.'" *Access Reports v. U.S. Dep't of Justice*, 926 F.2d 1192, 1195 (D.C. Cir. 1991).

Approximately 95 documents were withheld in full or in part under the deliberative process privilege. The majority of the documents withheld in full are e-mail attachments that consist of draft documents, and some documents also are duplicates.  (Ingram Decl. ¶¶ 29, 32) The Exemption 5 withholdings also encompass less than a handful of  documents withheld on the basis of attorney-client privilege.   (Ingram Decl. ¶ 30)

### a.  Deliberative Process Privilege

Many of the documents withheld in this case are protected by the deliberative process privilege and were properly withheld under Exemption 5.  The specific documents and the basis for the application of Exemption 5 to those documents is set forth in detail in the *Vaughn* index attached to the accompanying Ingram Declaration.   The Declaration itself also provides examples of the type of material withheld under Exemption 5.  (*E.g.,* Ingram Decl. ¶¶ 32-35) The Exemption 5 withholdings include:  recommendations, draft documents, proposals, suggestions, and other documents such as email messages, that reflect the personal opinions of the author (rather than the policy of the agency) or the give and take of the policy making process.  *See Bloomberg, L.P. v. U.S. Securities and Exchange Commission*, 357 F. Supp. 2d 156, 168 (D.D.C. 2004).

That Exemption 5 is implicated by the request should not be surprising to Plaintiff because the subject matter of the requests at issue concerns the EPA's review of whether a

pesticide may be used in certain states, which necessarily involved a deliberative process before the agency made a final determination. The deliberative communications occurred among EPA staff, and between EPA and its state and federal partner agencies. (Ingram Decl. ¶ 29) The inclusion of state agencies in deliberative communications, moreover, does not preclude the application of Exemption 5 to those communications. *General Elec. v. EPA,* 18 F. Supp. 2d 138, 142 (D. Mass. 1998) ("The boundaries of the federal executive deliberative process privilege in this co-regulatory situation extend only so far as is necessary to protect actual federal deliberative processes."); *Cf. National Inst. of Military Justice v. Dep't of Defense,* 512 F.3d 677, 686-87 (D.C. Cir. 2008) (Exemption 5 covers communications with outside experts solicited for advice by the agency); *Formaldehyde Inst. v. Dep't of Health and Human Servs.,* 889 F.2d 1118, 1123 (D.C. Cir. 1989) ("[w]hether the author is a regular agency employee or a temporary consultant is irrelevant; the pertinent element is the role, if any, that the document plays in the process of agency deliberations") (internal quotations omitted); *Ryan v. U.S. Dep't of Justice,* 617 F. 2d 781, 790 (D.C. Cir. 1980) ("[w]hen an agency record is submitted by outside consultants as part of the deliberative process, and it was solicited by the agency, we find it entirely reasonable to deem the resulting document to be an 'intra-agency' memorandum for purposes of determining the applicability of Exemption 5").

### b.  Attorney Client Privilege

EPA also withheld under Exemption 5 a small group of documents protected by the attorney-client privilege. The documents withheld under this exemption contained confidential communications exchanged among EPA staff and legal counsel in EPA- HQ. In addition, the documents withheld included some exchanged between non-legal personnel, reflecting legal advice. (Ingram Decl. ¶ 30)

The attorney-client privilege protects "confidential communications between an attorney and his client relating to a legal matter for which the client has sought professional advice." *Mead Data, supra,* 566 F.2d at 252. "Like the deliberative process privilege, the attorney-client privilege helps improve the quality of agency decision making by safeguarding the free flow of information that is a necessary predicate for sound advice." *Murphy v. Tennessee Valley Authority,* 571 F. Supp. 502, 506 (D.D.C. 1983). The privilege applies "'primarily to facts divulged by client to attorney, but … also includes opinions from attorney to client based on those facts,'" *id.* (quoting *Brinton v. Dep't of State,* 636 F.2d 600, 605-06 (D.C. Cir. 1980)), "as well as communications between attorneys that reflect client-supplied information." *Electronic Privacy Information Center v. Dep't of Homeland Security,* 384 F. Supp. 2d 100, 114 (D.D.C. 2005).

The attorney-client privilege is "not limited to communications made in the context of litigation or even a specific dispute, but extends to all situations in which an attorney's counsel is sought on a legal matter." *Coastal States, supra*, 617 F.2d at 862. The agency has an affirmative obligation to show that the communication was, and continues to be, confidential, *id.* at 863; however, limited circulation within an agency to employees involved in a matter for which advice is sought does not breach confidentiality. *Murphy, supra,* 571 F. Supp. at 506. "The privilege applies to confidential communications made to an attorney by both high-level agency personnel and lower-echelon employees." *Electronic Privacy, supra,* 384 F. Supp. 2d at 114.

### 2.    Defendant Properly Withheld Information Under Exemption 6

Exemption 6 permits the withholding of "personnel and medical files and similar files" when the disclosure of such information "would constitute a clearly unwarranted invasion of personal privacy." 5 U.S.C. § 552(b)(6). The term "similar files" is broadly construed and

includes "Government records on an individual which can be identified as applying to that individual." *U.S. Dep't of State v. Wash. Post Co.*, 456 U.S. 595, 602 (1982); *Lepelletier v. Fed. Deposit Ins. Corp.*, 164 F.3d 37, 47 (D.C. Cir. 1999) ("The Supreme Court has interpreted the phrase 'similar files' to include all information that applies to a particular individual."); *Govt. Accountability Project v. U.S. Dep't of State*, 699 F. Supp. 2d 97, 105-06 (D.D.C. 2010).

In assessing the applicability of Exemption 6, courts weigh the "privacy interest in non-disclosure against the public interest in the release of the records in order to determine whether, on balance, the disclosure would work a clearly unwarranted invasion of personal privacy." *Lepelletier*, 164 F.3d at 46; *Chang v. Dep't of Navy*, 314 F. Supp. 2d 35, 43 (D.D.C. 2004). "[T]he only relevant public interest in the FOIA balancing analysis [is] the extent to which disclosure of the information sought would 'she[d] light on an agency's performance of its statutory duties' or otherwise let citizens know 'what their government is up to.'" *Lepelletier*, 164 F.3d at 47 (quoting *U.S. Dep't of Def. v. Fed. Labor Relations Auth.*, 510 U.S. 487, 497 (1994)) (alterations in original); *Beck v. Dep't of Justice*, 997 F.2d 1489, 1492 (D.C. Cir. 1993) (quoting *Dep't of Justice v. Reporters Comm. for Freedom of the Press*, 489 U.S. 749, 773 (1989)). "Information that 'reveals little or nothing about an agency's own conduct' does not further the statutory purpose." *Beck*, 997 F.2d at 1492.

EPA applied Exemption 6 to withhold a personal telephone number of an EPA employee. The application of this exemption was appropriate because the individual has a strong privacy interest in this type of information and there is no apparent legitimate public interest in disclosure. In addition, the withheld information does little to shed light or contribute significantly to public understanding of the operations or activities of EPA.

The law is well settled that third parties and government employees have substantial, protectable privacy interests in their anonymity. *Nation Magazine v. U.S. Customs Serv.*, 71 F.3d 885, 893, 895-96 (D.C. Cir. 1995); *Computer Professionals for Social Responsibility*, 72 F.3d at 904; *see also Thomas v. DOJ*, 531 F. Supp. 2d 102, 110 (D.D.C. 2008) (collecting cases); *Am. Fed'n of Gov't Employees, Local 812 v. Broadcasting Bd. of Governors*, 711 F. Supp. 2d 139, 156 (D.D.C. 2010) (upholding redaction of names and other information relating to another individual pursuant to Exemption 6); *Govt. Accountability Project*, 699 F. Supp. 2d at 105-06 (concluding that agency properly redacted personal email addresses of applicants for board positions because "releasing their email addresses serves no public interest because these email addresses would not reveal 'what the government is up to'"). Indeed, courts have held that "[w]hile there may be some public interest in obtaining the identifying information of the Federal employees at issue, disclosure would not shed any light on the workings of [an agency]." *Canaday v. U.S. Citizenship & Immigration Servs.*, 545 F. Supp. 2d 113, 118 (D.D.C. 2008).

Because there is no countervailing public interest that can overcome the privacy interest of government employees, EPA properly redacted this information pursuant to Exemption 6. *See Beck v. Dep't of Justice*, 997 F.3d 1489, 1494 (D.C. Cir. 1993) (finding that when there is no public interest at all, the court "'need not linger over the balance; something outweighs nothing every time'") (quoting *Nat'l Ass'n of Retired. Fed. Employees v. Horner*, 879 F.2d 873, 879 (D.C. Cir. 1989)).

### C. Defendant Complied With FOIA's Segregability Requirement

Under the FOIA, if a record contains information exempt from disclosure, any "reasonably segregable," non-exempt information subject to FOIA must be disclosed after redaction of the exempt information. 5 U.S.C. § 552(b). Non-exempt portions of records need

not be disclosed if they are "inextricably intertwined with exempt portions." *Mead Data Cent., Inc. v. Dep't of the Air Force*, 566 F.2d 242, 260 (D.C. Cir. 1977).   To establish that all reasonably segregable, non-exempt information has been disclosed, an agency need only show "with 'reasonable specificity'" that the information it has withheld cannot be further segregated. *Armstrong v. Executive Office of the President*, 97 F.3d 575, 578-79 (D.C. Cir. 1996); *Canning v. Dep't of Justice*, 567 F. Supp. 2d 104, 110 (D.D.C. 2008).   "Agencies are entitled to a presumption that they complied with the obligation to disclose reasonably segregable material," which must be overcome by some "quantum of evidence" by the requester.   *Sussman v. U.S. Marshals Serv.*, 494 F.3d 1106, 1117 (D.C. Cir. 2007).

Here, where non-exempt information could be segregated from exempt information, EPA segregated and disclosed the non-exempt information from the records that were withheld in part.   (Ingram Decl. ¶ 38-39).   Therefore, the Court should find that EPA properly complied with its duty to segregate exempt from non-exempt information.

## II.   Plaintiff's FOIA Claims Based on Alleged Deficiencies in the Administrative Process (Counts I-IV) Fail to State A Claim and Are Moot.

In Counts I-IV of the Complaint, Plaintiff asserts several claims based on alleged deficiencies in the administrative process underlying this lawsuit.   These claims fail, however, because Plaintiff is not bound by the outcome of the FOIA administrative process, nor required to await the outcome of that process before seeking *de novo* review in federal court.   *Citizens for Responsibility & Ethics in Washington v. FEC,* 711 F.3d 180, 184 (D.C. Cir. 2013) ("[I]f an agency fails to make and communicate its 'determination' whether to comply with a FOIA request within certain statutory timelines, the requester 'shall be deemed to have exhausted his administrative remedies.'")

Accordingly, in the face of agency inaction or non-compliance with the time deadlines in FOIA, a FOIA requester can proceed directly to Court to address the substantive FOIA claim. *See Nat'l Sec. Counselors v. CIA,* 898 F. Supp. 2d 233, 281 (D.D.C. 2012) (agency inaction "could be viewed as a boon to FOIA requesters because it expedites a requester's ability to seek judicial review"). That is the procedure that Plaintiff followed in connection with the two requests at issue. Although Plaintiff makes conclusory allegations regarding an alleged "pattern and practice" of non-compliance with FOIA, Plaintiff's allegations regarding alleged deficiencies during the administrative process are limited to the agency's handling of those two requests. (*E.g.,* Compl. ¶¶ 52-86)

There is authority that courts have "the power under FOIA to provide . . . declaratory and injunctive remedies" in connection with "pattern and practice" claims for the violation of the procedural requirements of FOIA during the process of requests. *Nat'l Sec. Counselors,* 898 F. Supp. 2d at 265. Plaintiff, however, has failed to assert a viable pattern and practice claim here. Specifically, Plaintiff has failed to plausibly plead that EPA's conduct during the administrative process constitutes a "pattern of practice" in violation of FOIA. Plaintiff has alleged only that, with respect to the two particular FOIA requests at issue, EPA failed to provide an estimated completion date, or a final determination letter, within the time period required by FOIA. (*E.g.,* Compl. ¶ 62) Those allegations are specific to the processing of the request at issue – which involved a time consuming search based on the language of the specific requests – and fail to establish the existence of a policy to disregard the time limitations in FOIA. *See, e.g, Muttit v. United States Cent. Command,* 813 F. Supp. 2d 221, 231 (D.D.C. 2011) ("The Court concludes that an allegation of a single FOIA violation is insufficient as a matter of law to state a claim for relief based on a policy, pattern, or practice of violation FOIA.").

Because Plaintiff's claims focus on the processing of the two requests at issue and are devoid of any specific allegations concerning an EPA policy, the claims regarding the administrative process (whether asserted as a "pattern or practice" or otherwise) also are moot now that Plaintiff has received a final response to the FOIA requests. Thus, Plaintiff lacks standing to pursue such claims. *See, e.g., Competitive Enterprises v. EPA,* 153 F. Supp. 3d 376, 383 (D.D.C. 2016) (dismissing a "pattern and practice" claim regarding the handling of plaintiff's FOIA request because "the record does not support the conclusion that there is a risk of future wrongdoing that would warrant retaining jurisdiction over a dispute that is otherwise moot"); *Tipograph v. DOJ,* 146 F. Supp. 3d 169, 176 (D.D.C. 2015) ("A 'passing allegation that' a plaintiff plans to file additional FOIA requests to the agency in the future will not suffice to 'establish . . . standing to pursue [a] 'pattern or practice' claim'"); *Harvey v. Lynch,* 123 F. Supp. 3d 3, 8 (D.D.C. 2015) (dismissing claim as moot where "Plaintiff does not challenge an ongoing policy or practice. Rather, he attacks the agency's failure to process his April 14, 2014 FOIA request in a timely manner").

## III. Plaintiff's APA Claims (Counts VIII-IX) Should Be Dismissed For Lack Of Subject Matter Jurisdiction Or Failure To State A Claim

In Count VIII-IX, Plaintiff alleges that the same conduct upon which Plaintiff's FOIA claims are based constitutes, in the alternative, an APA violation. As discussed above, EPA has not improperly withheld information from Plaintiff. Moreover, for reasons stated below, Plaintiff cannot re-characterize its FOIA claims as one for relief under the APA.

The APA provides for judicial review of agency action when it is made reviewable by statute or when there is "no other adequate remedy in a court." 5 U.S.C. § 704; *Garcia v. Vilsack*, 563 F.3d 519, 522 (D.C. Cir. 2009). Generally, if Congress has provided a separate cause of action or an independent review procedure, then APA review is precluded. *Feinman v.*

*F.B.I.*, 713 F.Supp.2d 70, 76 (D.D.C. 2010) (citing *El Rio Santa Cruz Neighborhood Health Center, Inc. v. U.S. Dep't of Health & Human Servs.*, 396 F.3d 1265, 1270 (D.C. Cir. 2005)). The alternative relief provided by the cause of action or procedure does not need to be identical to preclude APA review, but it must be adequate and of the "same genre." *Feinman*, 713 F.Supp.2d at 76 (quoting *El Rio*, 396 F.3d at 1272).

When an APA claim "[seeks] remedies made available by FOIA," the APA remedies are of the "same genre" as those available under FOIA, and thus the claim is outside of the judicial review provided for under the APA. *Feinman*, 713 F.Supp.2d at 76; *see also Kenney v. U.S. Dep't of Justice*, 603 F.Supp.2d 184, 190 (D.D.C. 2009) (finding that FOIA precludes APA claims that an agency did not respond to FOIA request in an adequate amount of time). "The FOIA imposes no limits on court's equitable powers in enforcing its terms." *Payne Enterprises, Inc. v. U.S.*, 837 F.2d 486, 494 (D.C. Cir. 1988). Therefore, when a plaintiff seeks equitable relief under the APA because of a denied FOIA request, "the statutory and equitable remedies available . . . under FOIA would provide the same relief" as those under the APA. *Feinman*, 713 F.Supp.2d at 77.

Here, Plaintiff seeks equitable remedies under both the FOIA and APA that are indistinguishable, and thus the APA claims should be dismissed either for lack of jurisdiction or failure to state a claim. While the distinction between grounds for dismissal for lack of jurisdiction or failure to state a claim has not always been clear, *Sierra Club v. Jackson*, 648 F.3d 848, 853 (D.C. Cir. 2011) (citing *Oryszak v. Sullivan*, 576 F.3d 522, 527 (D.C. Cir. 2009)), district courts in the D.C. Circuit have routinely ruled that they lack subject matter jurisdiction when an APA claim is precluded by an adequate FOIA remedy. *See e.g.*, *Feinman v. F.B.I.*, 713

F.Supp.2d 70, 76 (D.D.C. 2010) (citing numerous cases in which district courts decided the matter on the basis of subject matter jurisdiction); *Kenney,* 603 F.Supp.2d at 190.

The eighth and ninth causes of action allege a violation of the APA due to Defendants' failure to meet certain administrative deadlines under FOIA as an alternative to the claims asserted under FOIA based on the same conduct. At no point does the Complaint cite any independent grounds for the purported claims under the APA. Since the Court is not limited in its ability to impose equitable remedies under FOIA, *Payne Enterprises*, 837 F.2d at 494, and the Plaintiff seeks the same remedies for his APA claim, the APA claim should be dismissed for lack of subject matter jurisdiction or failure to state a claim. *Feinman*, F.Supp.2d at 76; *Kenney*, 603 F.Supp.2d at 190.

In addition, to the extent Plaintiff bases its claim on section 706(1) of the APA – agency action that is unlawfully withheld – that claim is moot because the agency has now processed and released all segregable, non-exempt records subject to FOIA. APA review of agency inaction in the administrative process is unavailable, moreover, because, in the face of agency inaction, a FOIA plaintiff retains the right to seek *de novo* review in federal court based on a constructive exhaustion theory. As in other contexts involving similar administrative exhaustion schemes, the private right of action afforded under FOIA precludes an APA claim for alleged improper handling by the agency of a FOIA request. *See Smith v. Casellas,* 119 F.3d 33, 34 (D.C. Cir. 1997) ("Congress intended the private right of action provided for in section 706(f)(1) of the Act (42 U.S.C. § 2000e-5(f)(1))--under which an aggrieved employee may bring a Title VII action directly against his or her employer--to serve as the remedy for any improper handling of a discrimination charge by the EEOC."); *see also Wright v. Dominquez,* 2004 U.S. App. LEXIS 15239, at *2 (D.C. Cir. July 21, 2004) ("Federal employees such as appellant are not

bound by the outcome of the EEOC's administrative process but are entitled to de novo review in district court regardless of that outcome" and "[t]his de novo review provides an adequate remedy . . . for complaints about the EEOC's administrative process, precluding an APA challenge to the EEOC's procedures."); *Ward v. EEOC,* 719 F.2d 311, 313-14 (9th Cir. 1983) ("The EEOC's negligence or inaction in the internal processing of a complaint has no determinate consequences because such actions are merely preparatory to a lawsuit" and thus "the statutory requirement that there be 'no other adequate remedy in a court' is not met.").

The unavailability of APA review in such contexts is well settled.  In *Council of and for the Blind v. Regan,* 709 F.2d 1521 (D.C. Cir. 1983), plaintiffs alleged that the agency violated the APA by failing to respond to their administrative complaints about alleged discriminatory conduct by grant recipients' in the use of agency funds    *Id.* at 1524.  The Court dismissed the APA claim because the underlying substantive statute provided an adequate remedy, namely, individual lawsuits against the grant recipients on the merits of the discrimination claims.  *Id.* at 1531-33.  In *Garcia v. Vilsack,* 563 F.3d 519 (D.C. Cir. 2009), the Court held that *Council* applied equally when the underlying claim of discrimination raised in the pending (and not-acted-upon) administrative complaint was directed against the agency itself.  *Id.* at 525.

Plaintiff thus has no APA claim for EPA's alleged failure to meet certain deadlines during the administrative process.  *See, e.g., Nat'l Sec. Counselors,* 898 F. Supp. 2d at 281 ("'an on-going program or policy is not, in itself, a 'final agency action' under the APA,' and thus a court's 'jurisdiction does not extend to reviewing generalized complaints about agency behavior'").

## <u>CONCLUSION</u>

For the reasons set forth above, Defendant respectfully requests that this Court grant summary judgment in favor of Defendant as to all claims in this case.

Respectfully submitted,

CHANNING D. PHILLIPS, D.C. Bar #415793
United States Attorney

DANIEL F. VAN HORN, D.C. Bar #924092
Chief, Civil Division

By:  /s/
JEREMY S. SIMON
DC BAR # 447956
Assistant United States Attorney
555 4th Street, N.W.
Washington, D.C. 20530
Tel: (202) 252-2528
Jeremy.Simon@usdoj.gov