**Exhibit DD**

**Greenpeace v. Mineta, No. 00-000068, ECF No. 122 (D. Haw. Oct. 27, 2000)**

IN THE UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF HAWAII

| | |
|---|---|
| GREENPEACE FOUNDATION, et al., | ) |
| | ) CIVIL NO. 00-00068SPKFIY |
| Plaintiffs, | ) |
| | ) |
| v. | ) |
| | ) |
| NORMAN MINETA,[1] Secretary, | ) |
| United States Department of | ) |
| Commerce, et al., | ) |
| | ) |
| Defendants, | ) |
| | ) |
| and | ) |
| | ) |
| ASSOCIATION OF NWHI LOBSTER | ) |
| PERMIT HOLDERS, | ) |
| | ) |
| Defendant-Intervenor. | ) |

FILED IN THE
UNITED STATES DISTRICT COURT
DISTRICT OF HAWAII

OCT 2 7 2000

at 2 o'clock and ___ min. __M.
WALTER A. Y. H. CHINN, CLERK

ORDER AFFIRMING IN PART AND REVERSING IN PART MAGISTRATE JUDGE'S ORDER DENYING PLAINTIFFS' MOTION TO STRIKE CLAIMS OF PRIVILEGE AND GRANTING DEFENDANTS' MOTION FOR PROTECTIVE ORDER

FACTUAL BACKGROUND

Plaintiffs Greenpeace Foundation, Center for Biological Diversity, and Turtle Island Restoration Network ("Plaintiffs") filed suit against Defendants Secretary of the United States of Commerce and the Assistant Administrator of the National Marine Fisheries Service ("NMFS") (collectively "Defendants"), claiming that their management of the lobster and bottomfish fisheries in

---

[1] Norman Mineta, the new Secretary of Commerce, is substituted as a co-Defendant in place of William M. Daley pursuant to Federal Rule of Civil Procedure 25(d)(1).

the Northwestern Hawaiian Islands violate the Endangered Species Act ("ESA") and the National Environmental Policy Act. On April 4, 2000, Defendants filed the Administrative Record ("AR") in this case and a list of privileged documents they withheld from the AR. Of the 2,347 documents filed in the AR, Defendants withheld 44 documents on the basis of one or more of the following privileges or protections: (1) attorney-client privilege; (2) attorney work-product protection; (3) deliberative process privilege; and (4) trade secrets privilege.

On August 10, 2000, Plaintiffs filed a Motion to Strike Claims of Privilege as to Documents Improperly Withheld from the Administrative Record. Plaintiffs argue that the privileges and protections asserted do not apply and that Defendants have not provided sufficient justification for excluding the 44 documents from the AR. On September 7, 2000, Defendants filed a Second Motion for Protective Order along with the Declaration of William T. Hogarth, which describes the privileges and/or protections that apply to each of the withheld documents.

In an Order dated September 28, 2000 ("Magistrate Order"), Magistrate Judge Francis I. Yamashita denied Plaintiffs' Motion to Strike and granted Defendants' Motion for Protective Order. Judge Yamashita determined on the basis of the Hogarth declaration that the four privileges and protections asserted

applied to the documents. Plaintiffs timely appealed pursuant to Federal Rule of Civil Procedure 72(a) and Local Rule 74.1.

## STANDARD OF REVIEW

A non-dispositive order by a magistrate judge will be set aside if it is "clearly erroneous or contrary to law." See 28 U.S.C. § 636(b)(1)(A); L.R. 74.1.

## DISCUSSION

### I. ATTORNEY-CLIENT PRIVILEGE

The Ninth Circuit has formulated the following test for applying the attorney-client privilege:

> (1) where legal advice of any kind is sought, (2) from a professional legal adviser in his capacity as such, (3) the communications relating to that purpose, (4) made in confidence (5) by the client, (6) are at the client's instance permanently protected (7) from disclosure by himself or by legal adviser (8) unless the protection is waived.

Matter of Fischel, 557 F.2d 209, 211 (9th Cir. 1977) (citing 8 John Henry Wigmore, Wigmore on Evidence § 2295 at 554 (McNaughton rev. 1961)). The privilege is limited to attorney-client communications made in confidence. See id. at 211.

The Magistrate Order found that the attorney-client privilege applied to 18 documents withheld from the AR. That portion of the Magistrate Order applies the privilege too broadly, and is thus contrary to law. Documents #121, #122, #127, #161, #163, #173, #176, #689, #725, #911, and #2291 are

3

privileged because the communications contained therein consist of requests for, and the rendering of, legal advice.[2] Based on the Hogarth declaration, the Court finds that these communications were made in confidence.

However, documents #19, #662, #708, and #1067 do not contain confidential communications, as they consist of memoranda discussing drafts of documents that are accessible to third parties. For instance, document #19 contains comments and opinions of general counsel of the National Oceanic and Atmospheric Administration ("NOAA") regarding a draft Environmental Assessment/Designation of Critical Habitat for the Hawaiian monk seal. See Hogarth Decl. ¶ 11(A). Document #708 consists of an attorney's legal review of a Fishery Management Plan ("FMP"). Preliminary drafts of documents intended to be disclosed to third parties (e.g., an environmental assessment, FMP) are not protected by the attorney-client privilege. See, e.g., In re Grand Jury Proceedings, 727 F.2d 1352, 1358 (4th Cir. 1984) (finding information not privileged because it was given to the attorney "to assist in preparing such prospectus which was to be published by others and was not intended to be kept in confidence."); United States Postal Serv. v. Phelps Dodge Ref.

---

[2] The numbers refer to the designation of the documents in the AR.

4

Corp., 852 F. Supp. 156, 163 (E.D.N.Y. 1994) (holding that drafts were not privileged when handwritten materials placed on the drafts were incorporated in final versions sent to third parties); North Carolina Elec. Membership Corp. v. Carolina Power & Light Co., 110 F.R.D. 511, 516 (M.D.N.C. 1986) ("Preliminary drafts of letters or documents which are to be published to third parties lack confidentiality."); Burroughs Wellcome Co. v. Barr Labs., Inc., 143 F.R.D. 611, 618 (E.D.N.C. 1992) (holding that draft patent applications are not privileged). There is authority supporting a contrary rule, but such cases hold that the privilege attaches to drafts, not the final product. See, e.g., In re Grand Jury Subpoena Duces Tecum Dated Sept. 15, 1983, 731 F.2d 1032, 1037 (2d Cir. 1984); In re Kidder Peabody Sec. Litig., 168 F.R.D. 459, 474 (S.D.N.Y. 1996). It is the burden of the proponent of the privilege to demonstrate that the privileged matter was not in fact incorporated into the final draft. See Phelps Dodge, 852 F. Supp. at 163; Carolina Power, 110 F.R.D. at 517. Defendants have not shown that the communications in the four memoranda were excluded from the final versions of the public documents about which the memoranda concern. Accordingly, documents #19, #662, #708, and #1067 are not protected by the attorney-client privilege.

5

Documents #280 and #283 are not privileged for similar reasons. Each document is a "transmittal of advance notice of proposed rulemaking" to general counsel. Hogarth Decl. ¶¶ 11(I), (J). A notice of proposed rulemaking is published in the <u>Federal Register</u>, and thus, it is not a confidential communication protected by the attorney-client privilege. Moreover, the transmission of such documents to a lawyer is privileged only if (1) the documents were privileged in the hands of the client, and (2) the documents were transmitted to the lawyer for the purpose of obtaining the lawyer's advice. <u>See</u> <u>Fisher v. United States</u>, 425 U.S. 391, 404 (1976). Because the notices are not privileged in and of themselves, they do not become privileged when they are transmitted to an attorney.

The Magistrate Order is REVERSED to the extent it finds that documents #19, #280, #283, #662, #708, and #1067 are protected by the attorney-client privilege.

## II. ATTORNEY WORK-PRODUCT PROTECTION

The attorney work-product rule creates qualified immunity against discovery of documents and tangible things prepared by a party or his representative in anticipation of litigation. <u>See</u> <u>Admiral Ins. Co. v. United States Dist. Ct.</u>, 881 F.2d 1486, 1494 (9th Cir. 1988); Fed. R. Civ. P. 26(b)(3). The Magistrate Order extended work-product protection to documents #668, #681, and

6

#2338. Defendants invoke the protection of the work-product rule for the three documents on the basis that they were "prepared by an attorney in contemplation of litigation." Hogarth Decl. ¶¶ 11(N), (O), (RR). According to Defendants, the documents were prepared "in anticipation of foreseeable litigation," even if "no litigation had commenced at the time the documents were prepared." Id.

The work-product protection extends only to material prepared in anticipation of litigation. See United States v. Nobles, 422 U.S. 225, 238 (1975). "The work product doctrine [applies] only to material generated primarily for use in litigation and material that would not have been generated but for the imminence of litigation." Interstate Production Credit Ass'n v. Fireman's Fund Ins. Co., 128 F.R.D. 273, 280 (D. Or. 1989) (citing Fischel, 557 F.2d 209). Although Defendants claim that all three documents meet this requirement, the truth of that claim is uncertain. A "foreseeable" threat of litigation -- which is how Defendants describe the impetus for the creation of the subject documents -- is not necessarily one that is imminent. However, it is possible the documents were prepared in anticipation of imminent litigation, given that Defendants have often been the subject of suits in the past few decades. The Court REMANDS the claim of work-product protection to the

7

Magistrate Judge for further consideration of whether litigation was imminent at the time the documents were prepared.

With respect to documents #681 and #2338, Defendants also claim protection under the attorney-client privilege. Document #681 is a legal opinion on a FMP. It is not privileged because Defendants have not proven that the communications contained therein were excluded from the final FMP. See supra at 5. Document #2338 is a memorandum from one NOAA attorney to another. In the memorandum, NOAA's general counsel comments on an FMP and discloses legal advice given to NMFS regarding the designation of critical habitat. The disclosure of legal advice to NMFS is privileged; the remaining portions of the memorandum are not.

III. DELIBERATIVE PROCESS PRIVILEGE

The deliberative process privilege permits the government to withhold documents that reflect advisory opinions, recommendations, and deliberations comprising part of a process by which government decisions and policies are formulated. See N.L.R.B. v. Sears, Roebuck & Co., 421 U.S. 132, 150 (1975). Its purpose is to promote frank and independent discussion among government decision-makers and to protect against premature disclosure of proposed agency policies or decisions. See Environmental Protection Agency v. Mink, 410 U.S. 73, 87 (1973);

8

Coastal States Gas Corp. v. Department of Energy, 617 F.2d 854, 866 (D.C. Cir. 1980).

In order for the deliberative process privilege to apply, the document sought to be exempt from disclosure must be (1) predecisional (i.e., generated before the adoption of the agency's policy or decision), and (2) deliberative in nature, containing opinions, recommendations, or advice about agency policies. See FTC v. Warner Communications Inc., 742 F.2d 1156, 1161 (9th Cir. 1984). Even if these requirements are met, however, a litigant may obtain deliberative materials if his or her need for the materials and the need for accurate fact-finding override the government's interest in non-disclosure. See id.

The Magistrate Order concluded that the deliberative process privilege applied to 17 documents and that Plaintiffs did not provide sufficient justification to overcome the privilege.

Plaintiffs argue that the privilege does not exist to protect factual and scientific determinations of the government from scrutiny. Plaintiffs contend that the documents for which Defendants assert the deliberative process privilege concern non-policy decisions.

Plaintiffs are correct that the privilege does not protect factual material that does not reveal the deliberative process. See National Wildlife Fed'n v. United States Forest Serv., 861

9

F.2d 1114, 1117 (9th Cir. 1988). However, the Ninth Circuit has declined to base the test of whether the privilege applies on the dichotomy between factual and policy determinations. See id. at 1119. Instead, the Ninth Circuit has focused the inquiry on "whether the document in question is a part of the deliberative process." Id. at 1118. Under this test, even a document that is factual in content would be exempt from disclosure "if disclosure of the document would expose 'the decision-making process itself' to public scrutiny by revealing the agency's 'evaluation and analysis of the multitudinous facts[.]'" Id. (quoting Montrose Chemical Corp. v. Train, 491 F.2d 63, 68 (D.C. Cir. 1974)).

Plaintiffs do not argue that the documents in question fall outside of the deliberative process. Rather, Plaintiffs disagree with Defendants' assertion of privilege on a more basic level: The documents concern determinations of a non-discretionary, factual, and scientific nature. As such, the determinations do not implicate decisions of policy.

A federal district court recently accepted this argument in a case similar to the instant one. See Greenpeace v. National Marine Fisheries Serv., No. C98-492Z, 2000 WL 151915 (W.D. Wash. Feb. 2, 2000). In Greenpeace, as here, NMFS withheld certain documents from the administrative record based on the

deliberative process privilege. The documents were generated in connection with NMFS's discharge of its duties under Section 7 of the ESA.[3] The court held that the deliberative process privilege was unavailable because an analysis of jeopardy and adverse modification under Section 7 is a factual rather than a legal or policy determination. See id. at *2.

On motion for reconsideration, the court clarified that its holding did not hinge on a finding that the documents contained purely factual information. See Greenpeace v. National Marine Fisheries Serv., No. C98-492Z, WL 433238 at *3 (W.D. Wash. Apr. 11, 2000). Instead, the court based its holding on the conclusion that the process of making a Section 7 determination was not policy-oriented in nature. See id. A determination of jeopardy and adverse modification under Section 7 requires NMFS to collect scientific facts and data, and to reach scientific conclusions based on these facts. "However, the fact that scientific expertise is brought to bear 'does not transform interpretations of facts into communications protected by the deliberative process privilege.'" Id. at *4 (quoting Seafirst

---

[3] Section 7 of the ESA requires every federal agency to insure that any action authorized, funded, or carried out by the agency is not likely to jeopardize the continued existence of threatened or endangered species or result in the destruction or adverse modification of habitat of such species. See 16 U.S.C. § 1536(a)(2).

11

Corp. v. Jenkins, 644 F. Supp. 1160, 1163 (W.D. Wash. 1986)). Expressions of expert opinion and professional judgment must relate to the exercise of policy-oriented judgment in order to be protected. See id. The court concluded that Section 7 does not require nor permit discretionary policymaking. A determination of jeopardy or adverse modification is an objective, fact-based conclusion.

The Court finds the reasoning of Greenpeace persuasive and applicable here. No deliberative process privilege attaches to documents made in connection with a process that is not policy-oriented in nature. Therefore, the Court finds that documents #823, #936, #938, #943, #1002, #1075, #2292, #2293, and #2297 do not qualify for the privilege. These documents were prepared as part of NMFS's Section 7 consultation pertaining to various agency actions affecting the Hawaiian monk seal. The privilege does not apply to these documents.

The Court also finds that document #931 is not protected by the deliberative process privilege under the National Wildlife test. The document contains an estimate of the exploitable populations of spiny and slipper lobster for the Northwestern Hawaiian Islands. See Hogarth Decl. ¶ 11(V). The estimate is calculated using a scientific model. The process is computational in nature and does not involve determinations of

12

law or policy. Thus, the document does not reveal a "deliberative process."

The remaining documents are protected under the deliberative process privilege, as they contain discussion and facts pertaining to policy decisions (e.g., whether to close the lobster fishery in a certain year). Moreover, Plaintiffs have not demonstrated that the information in these documents is particularly important or unavailable elsewhere in the AR. Thus, these documents are exempt from inclusion in the AR.

The Magistrate Order is AFFIRMED as to documents #963, #965, #1067, #1073, #2296, #2310, and #2320. The Order as to documents #823, #931, #936, #938, #943, #1002, #1075, #2292, #2293, and #2297 is contrary to law and is REVERSED to that extent.

IV. TRADE SECRET PRIVILEGE

Defendants claim a "trade secret" privilege for six documents pursuant to the Magnuson-Stevens Fishery Conservation and Management Act ("Magnuson-Stevens Act"). These documents allegedly contain confidential information collected from vessels active in the fisheries. The Magistrate Order sustained the privilege as to all six documents.

The privilege asserted is not truly based on protection of trade secrets, but rather on a statutory mandate that certain fishery data be kept confidential. The relevant provision of the

13

Magnuson-Stevens Act states: "Any information submitted to the Secretary [of Commerce] by any person in compliance with any requirement under this chapter shall be confidential and shall not be disclosed . . . ." 16 U.S.C. § 1881a(b)(1). A companion provision further provides:

> The Secretary [of Commerce] shall promulgate regulations to restrict the use, in civil enforcement or criminal proceedings under . . . the Endangered Species Act . . . of information collected by voluntary fishery data collectors, including sea samplers, while aboard any vessel for conservation and management purposes if the presence of such a fishery data collector aboard is not required by any of such Acts or regulations thereunder.

Id. § 1881a(c)(1).[4] However, the Magnuson-Stevens Act permits disclosure of confidential information in aggregate or summary form that does not disclose the identity or business or any person who submits the information. See id. § 1881a(b)(2). Disclosure also may be made pursuant to a court order. See id. § 1881a(b)(1)(C).

Defendants have not sufficiently demonstrated that the six documents in question fall within the purview of the confidentiality provisions. First, the Hogarth declaration does not state that the information in the documents was submitted in

---

[4] Despite the directive of the Magnuson-Stevens Act, the Secretary of Commerce does not appear to have promulgated any regulations restricting the use of information submitted by voluntary data collectors in enforcement proceedings.

14

compliance with the Magnuson-Stevens Act. Second, even assuming that requirement were satisfied, there is no indication that the information is not presented in summary or aggregate form such that identification of the business or person submitting the information is indiscernible. Third, Defendants have not shown that the information was collected by "voluntary fishery data collectors," and thus exempt from disclosure in civil enforcement suits under the ESA.

Furthermore, Defendants have not sufficiently demonstrated that disclosure will result in any harm. For each of the documents claimed under the privilege, the Hogarth declaration states that "[d]isclosure of the information would likely impair NMFS' ability to obtain necessary information in the future, and would cause substantial harm to the competitive position of the persons from whom the information was obtained." Hogarth Decl. ¶¶ 11(U), (BB), (DD), (HH), (LL), (MM). This statement tracks the legislative intent behind the confidentiality provision. Congress was concerned that public disclosure of fishery data would put persons from whom information was collected at a competitive disadvantage. Thus, the confidentiality provision was enacted to prevent release of fishery statistics "in the form of individual records unless pursuant to court order." S. Conf. Rep. No. 94-711, at 53 (1976), reprinted in 1976 U.S.C.C.A.N. 676

15

(legislative history of predecessor to § 1881a(b)(1)). Additionally, the policy of encouraging data collection gave rise to the prohibition against use in enforcement proceedings of information collected by a person aboard a fishing vessel that is operated by a voluntary participant in a data collection program. See S. Rep. No. 104-276, at 38 (1996), reprinted in 1996 U.S.C.C.A.N. 4111. Defendants have not demonstrated that the documents contain "individual records" or information that was collected through voluntary participation in a data collection program. Therefore, there is no indication that a court order limiting disclosure of the documents to Plaintiffs and their counsel would be injurious to the interests of a particular individual or to future data collection efforts.

For the reasons stated above, this Court finds that the Magistrate Order was contrary to law in concluding that the "fishery data" in the six documents are covered under the confidentiality provision of the Magnuson-Stevens Act. The Magistrate Order is REVERSED as to documents #929, #990, #1003, #1174, #2294, and #2295. Access to these six documents shall be limited to Plaintiffs and their counsel.

## CONCLUSION

The Magistrate Order is AFFIRMED IN PART AND REVERSED IN PART. Defendants are ORDERED to include the following documents

16

in the AR: Documents #19, #280, #283, #662, #708, #823, #931, #936, #938, #943, #1002, #1067, #1075, #2292, #2293, and #2297. Defendants are further ORDERED to include the following documents in the AR, access to which shall be limited to Plaintiffs and their counsel: #929, #990, #1003, #1174, #2294, and #2295. Furthermore, the Court REMANDS the claim of work-product privilege to the Magistrate Judge with instructions to determine whether documents #661, #668, and #2338 were prepared in anticipation of imminent litigation.

IT IS SO ORDERED.

Dated: Honolulu, Hawaii, October 27, 2000.

SAMUEL P. KING
UNITED STATES DISTRICT JUDGE

17