IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLUMBIA

| | | |
|---|---|---|
| CENTER FOR BIOLOGICAL DIVERSITY ) | | |
| Plaintiff, ) | | |
| ) | | |
| v. ) | 16-CV-175 (BAH) | |
| ) | | |
| UNITED STATES ENVIRONMENTAL ) | | |
| PROTECTION AGENCY, ) | | |
| ) | | |
| Defendant. ) | | |
| ) | | |

**FOURTH SUPPLEMENTAL DECLARATION OF EARL INGRAM, JR.**

I, Earl G. Ingram Jr., declare that the following statements are true and correct to the best of my knowledge and are based on my own personal knowledge, on information contained in the records of the United States Environmental Protection Agency ("EPA"), or on information supplied to me by employees under my supervision and employees in other offices, including the Office of Environmental Information ("OEI") and staff from within the Office of General Counsel ("OGC").

1. I am the Chief of the Public Information and Records Integrity Branch ("PIRIB") within the Information Technology and Resources Management Division ("ITRMD") of the Office of Pesticide Programs ("OPP"), at EPA Headquarters. I have held this position since August 10, 2014. From 2009 to 2014, I was a Team Leader for the PIRIB and I have worked in the Branch since September of 1997. In the course of my duties, I supervise the Office of Pesticide Programs staff responsible for responding to Freedom of Information Act ("FOIA") requests within the Office of Pesticides Programs for information/records concerning pesticides

as required by FOIA and the Agency FOIA regulations, including 40 CFR Part 2. The Office of Pesticide Programs is responsible for regulating pesticides and pesticide products under the Federal Insecticide, Fungicide, and Rodenticide Act ("FIFRA"), including registration of pesticides and pesticide products.

2. I am personally familiar with Plaintiff's FOIA requests that are at issue in this case. As the Chief of PIRIB, I supervise staff in the office responsible for completing the supplemental search for documents as ordered by this Court. I make this Declaration in support of EPA's renewed Motion for Summary Judgment. During the course of this case, I have made four previous declarations dated November 23, 2016, February 23, 2017, October 18, 2017, and June 6, 2018 that provide additional background and are incorporated by reference.[1]

3. The purpose of this declaration is to provide additional information describing EPA's review of records previously withheld in full or in part, and the supplemental search that EPA conducted in response to the Court's October 23, 2017 Order and September 28, 2017 Memorandum Opinion and Order. As to search, this declaration addresses issues raised by the Plaintiff in its July 16, 2018 Renewed Cross-Motion for Summary Judgment and Opposition to EPA's Renewed Cross-Motion for Summary Judgment.

4. *Draft Documents in EPA's Vaughn Index* - EPA's June 6, 2018 *Vaughn* Index provides a "Document Description" of each document, as well as a distinct "Exemption Justification" describing the basis for withholding any information in any particular document. EPA excluded from its *Vaughn* Index only exact duplicates of withheld records already accounted and explained elsewhere in the *Vaughn* Index. Any withheld document identified by

---

[1] As noted in my February 23, 2017 Declaration, Paragraph 12 superseded and corrected Paragraph 29 of my November 23, 2016 declaration. *See also* Paragraphs 18-20 of my June 6, 2018 Third Supplemental Declaration (providing further explanation).

EPA's Relativity document review software that differed in any way from any other withheld document has its own entry in the *Vaughn* Index. Therefore, many entries in the *Vaughn* Index include repetitive language since they are describing what is very often a draft document that is not substantively different than another withheld draft document. To the extent a document is substantively different from a similar document in another entry, that difference is described in the *Vaughn* Index.

5. As directed by the Court's September 28, 2017 Opinion, EPA's June 6, 2018 *Vaughn* Index describes the draft documents withheld and provides the basis for withholding. The *Vaughn* Index describes draft documents as "rough draft," "working draft," "very early draft," or "early draft" to identify where the particular draft fell in the development process for context and is not linked to a literal time frame. Therefore, just because a document is described as an "early" draft of a document that was later finalized and released within the same month does not indicate that the working draft document was not in fact "early." EPA has released drafts that did not have any substantive differences from the final versions.

6. For example, *Vaughn* Index entries 21 and 22 are two working draft documents of EPA's Ten State Addendum, which was later finalized that same month. As explained in the *Vaughn* Index, these two drafts were in a different format compared to the final version, contained proposed language with comments and questions from reviewers to be further developed, and even included states from the earlier versions of the ten-state assessment that were not included in the final version.

7. *Custodians* - EPA searched all additional custodians identified by the Court in its September 28, 2017 Memorandum Opinion and Order. EPA has no reason to believe any individuals in addition to the 22 already searched could be reasonably expected to have any

additional records responsive to Plaintiff's FOIA requests not already accounted for in its productions or *Vaughn* Index.

8. EPA's June 6, 2018 *Vaughn* Index identifies all Agency personnel that were included on any email described in the *Vaughn* Index. The Agency included this information at the Court's direction to provide the name and job title of each individual included on the emails, regardless of how they participated in the email discussion. The listing of any name in the *Vaughn* Index in no way suggested that any of these individuals should be considered to have any additional records responsive to Plaintiff's request.

9. Based on the list in the *Vaughn* Index, it appears that Plaintiff identified 26 additional individuals in its July 16, 2018 Cross-Motion and Opposition arguing that these 26 individuals should be custodians. Twenty of the 26 newly identified individuals were included in emails provided to Plaintiff in the original productions, but Plaintiff did not include as proposed additional custodians in its December 23, 2016 Declaration of Brett Hartl. These 26 individuals were not directly involved in the development of the documents that were the subject matter of Plaintiff's requests. While any herbicide registration and associated ecological risk assessments may result in incidental communications or tangential involvement with any number of individuals at EPA, tangential involvement does not indicate their involvement in the development of the two risk assessment documents at issue.

10. Further, many of these 26 individuals newly identified by Plaintiff were included on emails pertaining to responses to press inquiries mentioning Enlist Duo or copied on emails circulated broadly across the Office of Pesticide Programs concerning meetings. Two individuals

were only involved in press inquiries and a public event (Kaythi Han[2] and Linda Strauss). Another individual, Edom Seifu, was an intern during the timeframe of the search that had very limited involvement in the development of the assessments. Additionally, 21 individuals were not in the Environmental Fate and Effects Division ("EFED") of OPP that completed the draft assessments at issue.

11. The remaining three individuals from Plaintiff's list of 26 were members of the EFED division: Greg Orrick, Kristina Garber, and Donald Brady. However, these individuals were not on the EFED team that developed the risk assessments that were subject of Plaintiff's requests. Greg Orrick was only included on one broadly circulated meeting invitation. Kristina Garber was not a member of the EFED team working on Enlist Duo and was only indirectly involved in quality control on a probabilistic assessment portion of an addenda to the initial six-state effects determination. Donald Brady was the Director of EFED during the time frame of the requests. He was not identified by EPA as a custodian likely to have responsive records because his deputy, not Mr. Brady, was involved in the day to day work on Enlist Duo. Accordingly, because his Deputy was a custodian identified, it is unlikely that Mr. Brady originated records that were not already captured by the expansive search completed for other custodians. Further, Plaintiff did not identify Mr. Brady as a custodian in its December 23, 2016 Cross Motion and Opposition, which the Court referenced in the September 28, 2017 Opinion ordering the search of additional custodians.

12. *Search Terms* – As stated in Paragraph 7 of my June 6, 2018 Declaration, EPA performed a centralized electronic search using the same search terms used in the earlier searches

---

[2] Ms. Han is listed in the Agency's *Vaughn* Index as employed in the EFED division of OPP but was actually in the Communication Services Branch of the Field and External Affairs Division of OPP during the timeframe of the search.

and in accordance with the Court's October 23, 2017 Order and September 28, 2017 Opinion. As stated in Paragraph 13 of my November 23, 2016 Declaration, EPA has been in discussions with Plaintiff concerning the search parameters for the requests at issue in this case since December of 2014. At no point has the Plaintiff raised concerns with the search terms used in any of the Agency's searches up to this point.

13. After completion of the supplemental search following the Court's October 23, 2017 Order, EPA identified 51,871 potentially responsive documents, of which only 201 were identified as responsive and not accounted for in previous productions. The searches, as conducted, were reasonably calculated to locate any communications concerning the two refined risk assessments at issue in Plaintiff's FOIA requests.

14. *Release of Scientific Studies* - In paragraph 17 of my June 6, 2018 Declaration, I stated that EPA has provided 48 studies to Plaintiff and is not aware of any additional studies responsive to Plaintiff's requests. Registrant submitted data is any study or technical data submitted by the registrant, Dow AgroSciences. EPA searched for any study or technical data provided by the registrant used in the development of the ecological risk assessments for Enlist Duo and the studies that were located from that search have been provided to the Plaintiff. Moreover, all studies used in the development of the risk assessments, including those submitted by Dow AgroSciences, are available in the Agency's administrative docket for the registration of the herbicide. In addition, the searches completed were designed to capture any relevant studies submitted by or other communications from the registrant. For instance, as reflected in Exhibit FF of the Plaintiff's December 23, 2016 Cross Motion and Opposition, communications from Dow AgroSciences transmitting registrant data were captured in the search and produced in full to the Plaintiff. *See* ECF No. 17-36 at 7-12, 16-22. For example, study 49384801 submitted by

Dow AgroSciences referenced in the email on page 7 of Exhibit FF is one of the 48 studies listed as provided to the Plaintiff in paragraph 17 my June 6, 2018 Third Supplement Declaration.

15. *Segregability* – As stated in the Agency's *Vaughn* Index, the differences in many of the draft versions and final versions of withheld documents consist largely, if not wholly, of differences in the method of explanation and organization of text, rather than differences in the underlying facts. Release of any part of these draft documents would expose what occurred in the deliberative process between the creation of the draft and the issuance of the final documents, which have been released to the Plaintiff, along with many near final draft documents where this was not the case. Any language used the draft documents that remained in the final versions are interspersed throughout the documents, often with extensive edits, making them inextricably intertwined with privileged information and not further segregable considering the length and scope of these documents. All reasonably segregable scientific or factual information contained in the records responsive to Plaintiff's FOIA requests has been provided.

16. *FOIA Exemption 5 Deliberative Process Privilege* – A Supplemental Declaration from Dr. Sujatha Sankula, Branch Chief in the Environmental Fate and Effects Division of OPP is attached to EPA's Renewed Opposition to Cross Motion/Reply to Opposition to Motion for Summary Judgment to provide additional support of the EPA's application of the deliberative process privilege to the withheld documents.

17. *FOIA Exemption 5 Attorney-Client Privilege* – Entries 14 and 37 of EPA's *Vaughn* Index claimed the withheld portions of the referenced emails as exempt from disclosure under both the deliberative process privilege and the attorney-client privilege. The document described in Entry 14 includes a one paragraph redaction to one email in the chain. The document described in Entry 37 involves a one sentence redaction of one email in the chain. As

explained in the *Vaughn* Index, the redacted portions of these emails are exempt from disclosure under both the deliberative process privilege and the attorney client privilege. In the redacted portion of each of the emails, OPP employees directly discussed advice provided to them by OGC attorneys on the potential legal vulnerabilities of possible policy options OPP was considering at the time.

18. I identified three inadvertent errors in the June 6, 2018 *Vaughn* Index in the category slot for Entries 61, 62, and 75. For each of these three entries, the "Exemption(s)" category slot of the index erroneously contains "Attorney Client Privilege" in addition to "Deliberative Process Privilege." The Agency did not intend to claim the attorney-client privilege nor did the explanation in the body of the *Vaughn* Index address attorney-client privilege. The Agency maintains the deliberative process claim for each entry as set out in the *Vaughn* Index.

19. Entry 64 of EPA's *Vaughn* Index describes a document withheld in full under the deliberative process privilege and the attorney-client privilege containing two emails between two Agency attorneys. Upon further review, this document is now released in part. The body of the second email remains withheld as it is entirely comprised of a legal analysis of a specific portion of the draft six-state risk assessment. The first email was inadvertently withheld and is now released. The first email contains no text but only includes a question in the subject line from one attorney asking the other if they needed "…any help on Enlist today." A copy of the released document is attached as Exhibit 1 to this declaration.

Pursuant to 28 U.S.C. § 1746, I hereby affirm under penalty of perjury that the forgoing declaration is true and correct.

Executed this __5__ day of September 2018.

Earl G. Ingram, Jr.
Chief, Public Information and Records Integrity
Branch of the Office of Pesticide Programs
U.S. Environmental Protection Agency

ED__Vaughn3_0004007-0004009                                                                                                       Exhibit 1

**To:**      Knorr, Michele[knorr.michele@epa.gov]
**From:**    Wakefield, Benjamin
**Sent:**    Wed 2/26/2014 10:02:44 PM
**Subject:** Enlist "no effect" language?

*Confidential - Privileged - Deliberative - Do Not Disclose*



(b) (5)

ED__Vaughn3_0004007-0004009                                                                 Exhibit 1



Thanks!

- Ben

---

Benjamin J. Wakefield
U.S. Environmental Protection Agency
Office of General Counsel, Pesticides & Toxic Substances Law Office
1200 Pennsylvania Ave., N.W., Mail Code 2333A
Washington, D.C. 20460
Tel: 202-564-3186
Fax: 202-564-5531
wakefield.benjamin@epa.gov

NOTICE: This communication may contain privileged or other confidential information. If you are not the intended recipient, or believe you have received this communication in error, please delete the copy you received, and do not print, copy, retransmit, disseminate, or otherwise use the information. Thank you.

**From:** Knorr, Michele
**Sent:** Wednesday, February 26, 2014 7:37 AM
**To:** Wakefield, Benjamin
**Subject:** Let me know if you need any help on Enlist today n/m

Michele Knorr

Office of General Counsel

Pesticides and Toxic Substances Law Office

(202) 564-5631

ED__Vaughn3_0004007-0004009

Exhibit 1